## JAMES H. PRESTON, Receiver, *vs.* THE AMERICAN SURETY CO. OF NEW YORK, et al,

*Liability of Surety on Bond of Receiver—Unauthorized Act of Receiver —Effect of Decree in Collateral Case.*

A receiver was appointed by an order of a Court of equity to take charge of certain real estate to which an infant was entitled after the termination of an existing life estate.   He executed a bond with defendant as surety conditioned for the faithful performance of the trust reposed in him by said order or that might be reposed in him by any future order. The property in question had been advertised for sale under a mortgage and the receiver obtained from the guardian of the infant a sum of money for the purpose of satisfying the mortgagee's claim.   This money was not accounted for in the receivership proceedings and the receiver died insolvent.   A substituted receiver was appointed and a decree was passed directing him to make demand upon the surety of the former receiver for the amount so obtained and this suit was instituted to recover the same.   *Held*, that the first receiver was only authorized to take charge of the property mentioned in the proceedings and that in borrowing money for the purpose of discharging the mortgage claim he was undertaking a matter foreign to his duty as receiver and one which he had not been authorized by the Court to do and that consequently his surety is not liable for his misappropriation of the money so obtained.

A decree in a receivership case adjudged that a deceased receiver had obtained a sum of money in his capacity as receiver and had not accounted for the same and directed the new receiver to institute suit for

the same against the surety on the bond of the former receiver. The surety was not a party to the cause. *Held*, that this decree does not conclusively establish the liability of the surety, but is only *prima facie* evidence thereof, and in a suit against the surety he may show that the money was not paid to the receiver in pursuance of any order of Court authorizing him to receive the same.

*Decided June 16th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*S. S. Field* (with whom were *Gill & Preston* on the brief), for the appellant.

*James U. Dennis* (with whom was *Samuel K. Dennis* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

The American Surety Company of New York, one of the appellees in this case, became surety on the bond of John McNeill as receiver under appointment of the Circuit Court No. 2, of Baltimore City, under the following circumstances: A minor, one Swan Ward, had inherited from his mother, subject to the life estate of his father, Michael J. Ward, a fee-simple property located on Green street in the city of Baltimore. The property was subject also to a mortgage to the Spalding Perpetual Building and Loan Association of Baltimore City, a considerable portion of which was unpaid. The mortgage was in default and the mortgagee Building Association was proceeding to enforce a decree for sale of the property in question which had been obtained; and the trustee named in the said decree had taken steps towards making such sale. Thereupon one Ella Mahon, as guardian of said minor, Swan Ward, filed in Circuit Court No. 2, of Baltimore City, a bill of complaint, in which it was charged that the life tenant, Michael J. Ward, had been collecting the rents of the prop-

erty in question and applying the same to his own uses and had allowed the taxes and other expenses on the property to remain unpaid to such an extent that the before-mentioned Building Association had brought suit to foreclose its mortgage "claiming the sum of $725.89" to be due thereon for balance of "principal, interest, fines, taxes, advanced for 1900 and 1901, &c.;" that the trustee appointed to conduct the proceedings to foreclose the mortgage had advertised the property for sale; that it would be a great loss to the minor, her ward, and to all concerned if the property was allowed to be sold; that the life tenant, Michael J. Ward, who was in charge of the property and collecting the rents and profits thereof was insolvent and unable to properly handle said property and to prevent the sale thereof which would "be most disadvantageous to all concerned especially in view of the fact that said property" was "rented to a good tenant and for a good rental" with the prospect of an early increase thereof; that inasmuch as there was "imminent danger of loss to those interested in the said property by reason of the proposed, sale, and otherwise, a receiver should be appointed * * * to take charge of said property," who could "deal authoritatively with the said trustee in order to prevent said sale under foreclosure proceedings, and to hold and manage said property subject to the direction of" the Court; and it was accordingly prayed that a receiver be appointed "to take charge of and manage said property, under the direction of" the Court.

Upon this bill, and exhibits accompanying it, and an answer thereto a decree was passed appointing John McNeill receiver "with the power and authority to take charge and possession of the" property described in the bill and requiring the said Michael J. Ward to deliver up possession thereof, "subject nevertheless to the further order of" the Court. The decree required the said McNeill before entering upon his duties as receiver to file a bond in the penalty of $2,000 "conditioned for the faithful performance of the trust reposed in him by this order or which may be reposed in him by

any future order or decree in the premises." McNeill accepted the office of receiver and executed a bond with the penalty prescribed and with the aforesaid appellee corporation as surety. Tbe bond recited that "Whereas by an order of the Circuit Court No. 2, * * * John McNeill has been appointed receiver to cover the collection of rent from property No. 5 North Green street and to dispose of same under * * * of the Court;" but the condition was that prescribed by the decree "to faithfully perform the trust reposed in him by said order or that may be reposed in him by any future order or decree in the premises." The decree appointing the receiver was passed on the 5th of February, 1903, and McNeill's bond was dated on the 6th of that month.

It then appears in evidence that the property in question had been advertised in the mortgage foreclosure proceedings to be sold on the 10th of February, 1903, and "through" McNeill it was bid in at the sale by Ella Mahon for $7,775 and a deposit of $300 on the purchase price was made by her. She testified she bought it in to protect her ward. Without consultation with her McNeill had exceptions filed, in her behalf as purchaser, to the ratification of the sale. McNeill then procured Mr. Bernard to advance sufficient money to make up, with the $300 deposit money, the amount of the mortgage claim and expenses for the payment of which the property had been sold and Mr. Bernard took an entry of the decree to his use—that is he was substituted to the place of the mortgagee. McNeill also procured from Mr. Bernard through a check drawn to him as receiver $300—the amount of deposit made by Ella Mahon and returned this to her. For the two amounts thus received he gave to Mr. Bernard the following receipt: "Received of Richard Bernard three hundred dollars which with ten hundred and sixty-one 21-100 dollars advanced to Peter J. Campbell, trustee, makes thirteen hundred and sixty-one 21-100 dollars advanced for the purpose of conserving the property sold by Campbell, trustee in the case of the *Spalding Building Association* v. *Ward*, until disposition can be made of said property for the benefit of all parties inter-

ested. It being understood that said sums so advanced will bear interest.

(Signed)  John McNeill, Receiver."

At the time of the return of the $300 deposit money to Ella Mahon she gave to McNeill an acknowledgment of the receipt of it from "John McNeill, receiver," in which she recited the sale to her of the property in question for $7,775, the payment of the deposit, the filing of the exceptions and that the sale stood unratified and concluded the paper as follows : "In consideration of the payment of said sum of three hundred dollars, I do hereby agree to carry out the terms of sale as reported to me in said Court, and will on the demand of said receiver comply with the terms thereof, the acceptance of said three hundred dollars not to be construed as a release to me of my obligation to comply with the terms of said sale." This acknowledgment was dated March 21st, 1903. On March 16th, 1903, it appears Ella Mahon had delivered to McNeill a bond and taken from him the following receipt: "Received of Mrs. Ella Mahon A. M. R. R. 4 per c Bond to sell and pay with proceeds amount due on property 5 N. Green St."

(Signed)  John McNeill, Receiver.

On September 16th, 1903, McNeill gave her the following receipt: "Received of Mrs. Ella Mahon, Fourteen hundred and twenty-five 27–100 dollars %c mortgage due on premises No. 5 N. Green St. $1425.27–100.

(Signed)  John McNeill.

Mrs. Mahon had, on the 12th of February, 1903, obtained from Michael J. Ward, life tenant, an assignment of all of his interest in the property in question and in the proceeds of sale thereof. McNeill did not use the money paid over to him by Mrs. Mahon, as per his receipt of September 16th, 1903, for the purpose for which it was intended and never accounted for it in anyway in the receivership proceedings, and died insolvent. Thereupon the appellant in this case was, in said proceedings, appointed receiver in the place of said McNeill, and upon petition filed therein by the plaintiff, Ella Mahon,

guardian, and the answer of the administratrix of John Mc-
Neill thereto, and proofs submitted in connection therewith,
the Court, on the 15th of December, 1903, decreed that John
McNeill, prior to his death, had received large sums of money
in his capacity as receiver ; that of these moneys he failed to
account for $1,490.27–100; that he also failed to keep said
sum separate from his own property or to ear-mark it in any
way so that it could be identified ; and that on this account
the Court could not order his administratrix to bring said sum
into Court "although his estate is liable therefor *pari passu*
with other creditors of like dignity." It was then further de-
creed that the appellant in this case, as receiver, be "author-
ized and directed to make demand upon the surety upon the
bond of said John McNeill" for the said amount of $1,490.27
with interest from the time the same should have been ac-
counted for ; "and upon the failure or refusal of said surety
to pay the same" to bring suit as he might be advised.

The appellee, surety company, upon demand refused pay-
ment of said amount, which included the $1,425.27, which
John McNeill had received from Ella Mahon. Thereupon to
enforce payment thereof the appellant filed the bill in this case
against the appellee reciting the facts and praying for a de-
cree for payment of the amount so ascertained to be due by
the decree of December 15th, 1903. The administratrix of
John McNeill answered the bill neither admitting nor denying
the material allegations thereof, and averring a want of knowl-
edge of the matter of such allegations. The surety company
by its answer denied liability upon its bond under the facts
and circumstances which have been set out and which, for the
most part, are also set out in its answer. The Court below
refused relief as to the $1,425.27–100 as against the appellee,
surety company, and decreed that the same be paid to the
appellant by the administratrix of John McNeill out of any
assets coming to her hands from his estate, *pari passu*, with
other simple contract creditors, and that the said surety was
liable for $65, a balance of rents found to have been collected
and not accounted for by said John McNeill which it was

ordered te pay.   This appeal brings up the question· of the propriety of this decree as respects the claim of the appellant for the sum of $1,425.27.

The facts of the case have been fully set out because a statement of these in their logical sequence will make it unnecessary to do more that state briefly the conclusions of the Court thereon.   The appellant has urged that the surety, as well as the estate of the deceased receiver, is concluded by the decree of December 15th, 1903, as to all questions except those of whether an order was passed and did the principal carry it out; and further that if the liability of the surety is open to dispute such liability has been established by the proof in the case *dehors* the order.   Both of these propositions are disputed by· the appellee, Surety Company.   It insists that it was no party to, and did not know of, the proceedings in which the decree in question was passed until after it had been so passed, and that therefore the said decree can, at best, have but a *prima facie* effect against it.   Then it is claimed that the facts and circumstances of the case which were developed in the evidence adduced in the case show that McNeill did not take the $1,425.27 into his possession in the capacity of receiver and it was not therefore within the protection of the bond.  ·

The decree of December 15th, 1903, must be held as only *prima facie* binding upon the surety in the bond here in question.   It is not one dealing with the fund and fixing its *status* as in *Taylor* v. *State*, 73 Md. 208, and the cases there cited; but it deals with the default of the principal in the bond and to fix liability as against him as in *Perr* v. *State*, 71 Md. 220, and *Jenkins* v. *State*, 76 Md. 255.   The question therefore is to be determined whether its *prima facie* effect has been overcome by what appears in proof.   As to this, as has been seen, the contention of the appellee is that it is made to appear from the facts in proof that the $1,425.27 was not in McNeill's hands as receiver.   ''The general duty of a receiver may be said to be to take possession of the estate and premises, or any other property, the subject-matter of dispute in the cause,

in the room or place of the owner thereof; and under the sanction of the Court, when necessary, to do all such acts of ownership as to the receipt of rents, compelling payment of them, management, and letting the lands and houses and otherwise making the property as productive for the parties to be ultimately declared to be entitled thereto as the owner himself could do if he were in possession " *Kerr on Receivers*, 135. And he "ought not to interfere in any litigation between the parties." *Idem*, p. 153.

The decree appointing the receiver in this case did not confer upon him any powers or require of him any duties beyond those ordinarily attaching to the office. It only gave him "the power and authority to take charge and possession of the fee-simple property   *   *   *   mentioned in the bill of complaint," &c. By the terms of his appointment he was limited in his powers to the care and possession of the property committed to his charge "subject nevertheless to the orders of the Court." He had no powers by implication beyond those that were merely incidental to the care and management of the property itself. The bond therefore imposing liability upon his surety if he did not "faithfully perform the trust reposed in him by said order, or that may be reposed in him by any future order or decree in the premises," had relation necessarily to the duties falling within the scope of the order of his appointment. No new power and no new duty was conferred upon, or required of, him by any order afterwards passed and therefore there is no question as to liability except such as might arise out of failure to perform the original order. In taking into his possession the $1,425.27 McNeill was not doing anything in connection with the care and management of the property in his charge nor anything incidental thereto. He was undertaking the management of pending litigation, and engaging in a business, and embarking upon a line of conduct entirely foreign to his receivership powers and duties. He was doing therefore what was not, and could not have been within the contemplation of the parties to the bond at the time of its execution and not within the liability then assumed.

This we think is the logical and necessary result of the facts of the case and we must hold that the *prima facie* effect of the decree of the 15th of December, 1903, is thereby overcome.    The view taken of the case makes the question raised by the appellant in connection with the recital of the bond immaterial.    The decree of the Court below will be affirmed.

> *Decree affirmed with costs to the appellee.*