CUSACK, Adm'r, v. PRUDENTIAL INS. CO. OF AMERICA et al.

No. 29321. Feb. 23, 1943.

Rehearing Denied March 16, 1943.

*134 P. 2d 984.*

E. F. Maley, of Okmulgee, for plaintiff in error.

Earl Bohannon, of Parsons, Kan., and Cochran & Noble and John L. Norman, all of Okmulgee, for defendants in error.

DAVISON, J. This is a proceeding by E. R. Bryant, a receiver having charge of real estate in connection with mortgage foreclosure actions, to recover products of and receipts from products of the land from F. E. Cusack, as administrator of the estate of Perry K. Morton, deceased, and others.

The cause was tried to the court without the intervention of a jury and resulted in a judgment in favor of the receiver. F. E. Cusack, administrator, has appealed, appearing herein as plaintiff in error. The Prudential Insurance Company of America and E. R. Bryant, receiver, are defendants in error.

The particular litigation here involved is incident to and connected with other litigation previously instituted. A resume of that litigation is an essential part of our statement.

On December 2, 1936, the Prudential Insurance Company of America recovered a judgment against Perry K. Morton in a mortgage foreclosure action docketed in the district court of Okmulgee county as cause No. 20345. On July 7, 1937, the same company as plaintiff recovered another judgment against Morton in the same court but in another action. That action was docketed as No. 20742.

In cause No. 20345 Perry K. Morton, defendant therein, was appointed receiver on May 21, 1936, and on February 26, 1937, he was also appointed receiver of the property involved in cause No. 20742, except the homestead of the said defendant. Morton qualified as receiver but did not file any report.

On July 10, 1937, Morton filed a petition in bankruptcy in the United States District Court for the Eastern District of Oklahoma. The proceeding was instituted under section 75 of the Bankruptcy Act, 11 U. S. C. A. § 203 (Frazier-Lempke Act). The petition was "approved as properly filed" and the matter was referred to a Conciliation Commissioner sitting at Okmulgee. On November 1, 1937, Morton was adjudged a bankrupt. Neither of the orders contained any specific inhibition against further proceedings in the foreclosure actions.

On September 19, 1938, the bankruptcy proceeding was dismissed on motion of the Prudential Insurance Company. The life of the proceeding was slightly in excess of 14 months. On September 30, 1938, Morton died. On October 6, 1938, F. E. Cusack was appointed administrator of his estate. On November 2, 1938, E. R. Bryant was appointed substitute receiver in cause No. 20345 and a separate order of the same purport was entered in cause No. 20742.

On November 26th both actions (Nos. 20345 and 20742) were revived in the name of the administrator by separate proceedings.

On November 14, 1938, the substitute receiver filed in each of the actions a

petition charging in substance that the administrator, F. E. Cusack, had collected various sums of money as rents from the lands involved in said foreclosure proceedings, and that the administrator had also taken charge of some corn, hay, posts, and other personal property which were not assets of the estate but which should go to the receiver. He likewise alleged that other persons were indebted to him as receiver. He sought recovery of such moneys and articles of personal property.

To each of the petitions the administrator filed a response denying in substance that the receiver was entitled to the property and moneys, asserting certain legal objections to the manner in which the receiver was proceeding, and further asserting that the power of the receiver to receive and collect proceeds from the property was nonexistent during the pendency of the bankruptcy proceedings and that moneys and properties passing into the hands of Perry K. Morton during that time were his personal property even though he would have been accountable for them as receiver if the bankruptcy proceeding had not been pending.

The two proceedings were consolidated and tried as one. Findings of fact and conclusions of law were made by the trial court. Based thereon judgment in favor of the substitute receiver was rendered.

In this appeal plaintiff in error presents 39 assignments of error, which have been grouped under seven propositions, which are:

"I. The state district court was divested of jurisdiction from the date of the filing of bankruptcy proceedings.

"II. Failure of the trial court to make a finding on a material issue is reversible error.

"III. An administrator is entitled to the exclusive possession of personalty from the date of the death of the deceased until it is disposed of in the course of administration.

"IV. The findings are not supported by any evidence whatsoever.

"V. E. R. Bryant, receiver, had no right or authority to institute these proceedings against the administrator for possession of the property involved.

"VI. No legal process was served on the plaintiff in error.

"VII. Wagon or platform scales is personalty and not included in real estate mortgage."

The fifth and sixth propositions, which relate primarily to the propriety of the remedy pursued by the receiver, will be considered first.

The remedy chosen was summary in character. At its institution a notice was prepared and served on the parties sought to be charged in each of the proceedings, including in each instance plaintiff in error.

Each notice ran in the name of the state and was accompanied by a copy of the receiver's petition, thus advising the nature of the claims which were being asserted. However, in many respects the notices did not satisfy the requirements of formal summonses. They were sufficient to satisfy the requirements of the law in a summary proceeding but insufficient to meet legal standards in connection with the commencement of a civil action. This for the reason that in the former it is unnecessary to pursue with exactitude the requirements of the law as normally observed in a civil action between litigants. Clark on Receivers (2d Ed.) p. 796.

The administrator challenged the sufficiency of the notice by motion to quash on the theory that he could not be subjected to the jurisdiction of the court by such notices or in an informal and summary proceeding, and thereafter throughout the proceeding he continued to preserve and assert his objection to the manner of proceeding. Thus the determining question on this phase of the case is whether a summary proceeding is an appropriate method for substitute receiver to recover assets of the receivership which have passed into the hands of the administrator of a deceased former receiver.

There is no question that the more formal remedy of an independent civil action was available. Clark on Receivers (2d Ed.) p. 824; Preston v. American Surety Co. of New York, 104 Md. 40, 64 Atl. 292. While the question of whether a summary proceeding is appropriate and available is debatable, we have concluded that it may be approved in this case.

Neither of the parties have called our attention to any case precisely in point. The plaintiff in error in support of his objection to the form of proceeding relies upon: Nellis v. Justices' Court of Los Angeles, 20 Cal. App. 394, 129 P. 472; Ford v. Smead, 109 Vt. 129, 194 Atl. 369; Webb Packing Co. v. Harmon (Del.) 9 Harr. 22, 196 Atl. 158; Hamilton et al. v. Browder, 176 Okla. 229, 54 P. 2d 1025, and In re Gentry's Estate, 158 Okla. 196, 13 P. 2d 156; none of which bear directly on the question.

The defendant in error relies upon Tardy's Smith on Receivers (2d Ed.) § 54; Bien v. Robinson, 208 U. S. 423, 28 S. Ct. 379, 52 L. Ed. 556; James T. Shields, Jr., Rec., v. Coleman, 157 U. S. 168, 15 S. Ct. 570, 39 L. Ed. 660; Price v. Horrigan Contracting Co. (Del.) 11 Ch. 54, 95 Atl. 345.

It is the general rule that a receiver has no right through summary proceedings to obtain the possession of property found in the possession of third persons claiming adversely. See annotation 40 A. L. R. 903. However, this rule is not absolute and some exceptions are recognized by the courts. One of the recognized exceptions is when the property has previously been subject to the control of the court through its receiver and a third party by gaining possession has interfered with or interrupted the prior control of the court. See annotation 40 A. L. R. 903. Similarly, it has been held that a third party who has purchased property from a receiver may be compelled to pay the purchase price by summary proceedings. McCarter v. Finch, 55 N. J. Eq. 245, 36 Atl. 937. This is based partly on the theory that by the acquisition of property from the receiver, the third party, though not nominally a party to the litigation, should be treated as a party having dealt with property known to be subject to the control of the court, as well as on the theory of an interference with possession of the court. In Tardy's Smith on Receivers (2d Ed.) § 54, p. 227, supra, it is said:

"In the federal courts, and also some state courts, a distinction is made in the practice of procedure based upon the point whether the possession and claim of the third person arose prior or subsequent to the appointment of the receiver. In the former circumstances the receiver will be required to obtain possession by a plenary suit, while in the latter circumstances he will be allowed to proceed summarily by petition for a rule to show cause in the receivership proceedings."

In Bien v. Robinson, supra, it was stated by the Supreme Court of the United States, speaking through Mr. Justice White:

"Reduced to its last analysis, the contention of this branch of the case is that a court of equity, which, in the due exercise of jurisdiction, had appointed receivers of the assets and property of a corporation, and enjoined interference by others with such property, was without power, by summary process, after due notice and opportunity to be heard, to compel a repayment by one who, with knowledge of the order of injunction, and in violation of its terms, took in satisfaction of an indebtedness from a debtor to the corporation, property forming part of the assets of such corporation. We think the contention and the assignments of error based thereon are so manifestly frivolous as to be utterly insufficient to serve as the foundation for a writ of error."

In Clark on Receivers (2d Ed.) p. 797, para. 584, it is said:

". . . To summarize, a court of equity taking custody of assets and placing them in the hands of a receiver may bring summary proceedings concerning such assets under the following circumstances:

"First: A court may protect its custody, title and possession and control of the res by giving orders to those who are parties to the suit and officers of the court.

"Second: As to the third persons and neither officers of the court, nor parties to the suit, possession or custody by the court seems to be the determining factor as to whether a summary or plenary suit must be brought. Possession need not be physical but may be and sometimes is constructive possession. If the court has such possession then the court can protect its possession by summary process even against their persons."

In this case the present substitute receiver is seeking to recover property over which the court through the previous receiver is asserted to have had control. The control of the court over the property through its prior receiver (assuming for the purpose of this question the truth of the assertion of such prior authority) places this case in a different category from cases where such prior control did not exist. Wood v. National Corporation, 265 F. 791. It creates the basis for a summary proceeding against the administrator who has taken such property and is asserting a right to hold the same as against the substitute receiver.

While the answer to the question before us is not free from doubt, we conclude upon consideration of the foregoing authorities that a summary proceeding was not inappropriate in this case, and so hold. It follows that an adequate notice as distinguished from a regular and formal summons was a sufficient basis for the proceeding.

The plaintiff in error also questions the right of the substitute receiver to proceed against him on the theory that no specific leave of the court had been previously obtained authorizing the institution of the particular action.

In this connection it is pointed out that the order of appointment was drafted on general terms and contained no such authority. However, an examination of the record discloses that on the date of the filing of the petition by the receiver an order was entered by the trial court entitled an "order for hearing" such petition and directing the service of notice on the parties against whom relief was sought. This, of course, constituted an approval by the trial court of the institution of the proceedings, as did the subsequent hearing by the court and adjudication of the rights of the parties. The question, then, is whether the prior approval of the trial court was a jurisdictional prerequisite to the institution of the proceeding.

The plaintiff in error calls our attention to Chicago Joint Stock Land Bank v. Hargrove (Iowa) 234 N. W. 801, and Rapp Lumber Co. v. Smith, 243 Ky. 317, 48 S. W. 2d 17, which held in substance that a receiver exercises only such powers as he is authorized to exercise by the court appointing him.

Our statute provides for control by the appointing court of the receiver's prosecution and defense of actions, but it does not specify that prior authority is a jurisdictional prerequisite. It (12 O. S. 1941 § 1554) provides that:

"*The receiver has, under the control of the court, power to bring and defend actions in his own name, as receiver;* to take and keep possession of the property, to receive rents, to collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the courts may authorize." (Emphasis ours.)

In Willis v. Aetna Life Ins. Co., 185 Okla. 647, 95 P. 2d 608, this court said:

"In the absence of any showing to the contrary, it will be assumed that consent to the filing of suit by a receiver has been obtained or that such authority is contained in the order of appointment. Additionally, the objection may be waived. High on Receivers, section 254-A; 23 R. C. L. 126. Also, leave of court by which an equity receiver has been appointed need not be obtained before starting suit on a claim against a person or corporation of whose property the receiver has been appointed. Chicago Title & Trust Co. v. Fox Theatres Corp. (C.C.A.) 69 Fed. 2d

60, 91 A. L. R. 991; A. G. McKnight, Receiver, v. Brozich, 164 Minn. 90, 204 N. W. 917; 43 A. L. R. 1352. See, also, 53 C. J. 317."

In Bancroft's Code Practice and Remedies, vol. 5, pp. 5483-84, it is stated:

"By the great weight of authority the failure to obtain permission to sue a receiver even where it is required does not affect the jurisdiction of the court in which the action is brought. It is merely an irregularity which must be taken advantage of by asking for a stay of proceedings or instituting proceedings for contempt. . . ."

And even when permission is regarded as an essential prerequisite, the fact that the proceeding is in the court of appointment in itself creates a situation which is distinguishable from an action commenced in another court. As is said in 53 C. J. 337, para. 551, subject "Receivers":

"Failure to obtain leave to sue is no defense to an action brought in the same court in which the receivership proceedings are pending. . . ."

The reason for this is apparent. Obviously, an action or proceeding before the appointing court is at all times subject to the control of that court. The objection to the maintenance of the proceedings on the grounds of absence of prior authority of the appointing court to institute the same is therefore without substantial merit.

Before considering the effect of the pendency of the bankruptcy action, we shall consider one item in controversy that is not governed or affected thereby. A "pair of pit wagon scales" were installed on one of the farms involved in the mortgage foreclosure proceedings by Morton as owner long before the bankruptcy proceedings were instituted. The testimony with reference to these scales is as follows:

"A. It is a pair of pit wagon scales and it is sitting on a firm foundation. I never examined it to see whether it is rock or concrete, one or the other. And it is a permanent fixture to the premises."

The receiver took the position that these scales constituted fixtures and therefore were a part of the real estate and as such were subject to the mortgage lien on the real estate. The administrator, on the other hand, asserted that they constituted personal property and passed to him as such.

The parties agreed that this controversy should be submitted to and decided by the trial court in connection with the other issues more directly relating to the receivership. The trial court decided that the scales were fixtures and a part of the realty. In presenting the case on review the administrator, as plaintiff in error, invokes the doctrine of trade fixtures and calls our attention to several cases where items of a similar nature were installed by a tenant and were judicially held to be removable by him as trade fixtures.

The cases cited are inapplicable to the case at bar. The doctrine of trade fixtures is an exception to the general rule relating to fixtures. It is limited in its application to situations where landlord and tenant or lessor and lessee exist. As is said in 22 Am. Jur. p. 777:

"The exception in regard to trade fixtures has no application in the case of annexations by the owner of the land, and fixtures of this character ordinarily pass, as do all other fixtures, to the heir, grantee, or mortgagee of the land. . . ."

See, also, Bouvier's Law Dictionary (Rawle's Third Revision) p. 1241. It is, of course, true that independent of the doctrine of trade fixtures, the owner of property may place chattels thereon to use in conjunction with the land which still retain their identity as chattels, and are removable by him when he disposes of the land, and which may also be claimed by him as against an adverse claim by a mortgagee who has a lien on the real estate. In such cases the owner prevails, not because the fixtures are trade fixtures, but because they are not fixtures at all. In such cases the question of whether fix-

tures have been attached to the real estate in manner of permanent improvement as well as the future contemplated use are questions of paramount importance. Mortgage Bond Co. v. Stephens, 181 Okla. 419, 74 P. 2d 361. See, also, Great Western Mfg. Co. v. Bathgate, 15 Okla. 87, 79 P. 903.

While the evidence on the question of attachment in the case now before us is not lengthy or detailed, it seems ample to support the view and holding of the trial court that the scales were so attached, especially in view of our previous declarations that articles affixed to the land are prima facie realty. Etchen v. Ferguson, 59 Okla. 280, 159 P. 306.

We shall next consider the contention of the plaintiff in error that the pendency of the bankruptcy proceedings under section 75 of the Bankruptcy Act (11 U. S. C. A. § 203) divested Morton of any and all authority to receive and collect rents in his capacity as an officer of the state court.

In support of his position on this question plaintiff in error presents excerpts from section 75, supra. As introduced and quoted in his brief, they are:

"Under section 75 of the Bankruptcy Act, 11 U. S. C. A. § 203 (sec. 4-n) (Frazier-Lempke Act), it provides:

" 'The filing of a petition . . . shall immediately subject the farmer and all of his property, wherever located for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, . . .'

"Further the same statute, subsection (p) provides:

" 'All such property shall be under the sole jurisdiction and control of the court in bankruptcy,' etc. Also, further, subsection (s) of section 6, of said act (4) provides:

" 'If, at the time that the farmer debtor amends his petition or answer, asking to be adjudged a bankrupt, a receiver is in charge of any of his property, such receiver shall be divested of possession, and the property returned to the possession of such farmer, under the provisions of this title.' "

In addition to the language quoted, the following language also appears in subdivision (2) of subsection (s) of section 75, supra:

"(2) When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. . . ."

The defendant in error takes the position that by reason of the language last quoted the stay contemplated by section 75, supra, is a judicial stay of state court proceedings and jurisdiction as distinguished from an automatic stay under the statute. He asserts that since the federal court made no order directing a stay of proceedings in the state court during the bankruptcy proceeding, none was operative.

The position taken finds support in Hardt v. Kirkpatrick, 91 F. 2d 875, cited by defendant in error, and the subsequent case of Bernards et al. v. Johnson, 103 F. 2d 567. See, also, annotation in 99 A. L. R. 1378; 112 A. L. R. 1467 at 1477 et seq.

However, as indicated in the foregoing annotations, other authorities existed (when the trial court decided this case) contrary to the cases relied upon by the plaintiff in error. In fact, a state of confusion prevailed on the point at the time. It was stated in 6 Am. Jur. 788 that:

"The necessary steps to effect a stay of proceedings under the statute have been somewhat in doubt, and the question remains a troublesome one. The view seems to have been taken in some cases that the statute is self-executing, while others seem inclined to the view that only by specific order, upon application made, will a bankruptcy court's power or the provisions of the statute be brought into play to interfere with the machinery of state tribunals or officers."

The trial court approved the view of the defendant in error and held that the power of Morton to act as receiver under the state court was not suspended.

The question is one of federal law and it is incumbent upon us to follow the decisions of the Supreme Court of the United States. Any disposition which we might have to adopt the view of the trial court and of the subordinate federal courts (above specifically referred to) is foreclosed by the more recent decision of the Supreme Court of the United States in Kalb v. Feuerstein, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370. It was therein held in substance that the stay contemplated under section 75 of the act operates as an automatic statutory ouster of jurisdiction insofar as the power of state courts in foreclosure proceedings is concerned.

In view of the holding of the Supreme Court of the United States, the trial court was in error in holding the administrator responsible for receipts by Morton during the pendency of the bankruptcy proceeding.

The findings of the trial court are not clear as to what part of such receipts or collections was made before and after the pendency of the bankruptcy action. The procedure herein adopted is appropriate for the recovery of such receipts, if any.

That portion of the judgment awarding the scales to the receiver is affirmed. Otherwise, the cause is reversed and remanded, with directions to grant a new trial and proceed in a manner not inconsistent with the views herein expressed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and HURST, JJ., concur. ARNOLD, J., absent.