The STATE of Oklahoma ex rel. Joe B. HUNT, Insurance Commissioner, Plaintiff-Appellee,

v.

LIBERTY INVESTORS LIFE INSURANCE COMPANY, an Oklahoma Life Insurance Corporation, Defendant-Appellee,

v.

B. Cyril ROGERS, Third-Party-Appellant.

No. 47487.

Supreme Court of Oklahoma.

Dec. 16, 1975.

Doerner, Stuart, Saunders, Daniel & Langenkamp, Robert F. Biolchini, Stephanie K. Seymour, Dallas E. Ferguson, Tulsa, for appellees.

Stipe, Gossett, Stipe & Harper, Oklahoma City, for appellant.

BARNES, Justice:

The single issue to be decided on this appeal is whether the Trial Court erred in refusing to vacate its judgment of March 8, 1974, whereby it was ordered that Receivers were entitled to retain possession of Appellant's 1,282,691 shares of Liberty Investors Life Insurance Company stock.

Appellant, B. Cyril Rogers, seeks the return of said shares of stock pledged as collateral and seized by the Receiver under the terms of the Secured Guarantee, or, alternatively, for a new trial on the matter before a different judge.

For clarity and brevity, we will hereinafter refer to Appellee, Liberty Investors Life Insurance Company, as "Liberty Investors," and the Appellant, B. Cyril Rogers, an "Rogers." The essential background facts are as hereinafter related.

Rogers became the controlling shareholder of Liberty Investors on September 24, 1972, by purchase of stock from one Johnson Gunn and issuance to Gunn of a check drawn on Rogers' personal account in American Bank of Commerce of Oklahoma City. At the time the check was issued to Gunn, there were not sufficient funds in the American Bank of Commerce to cover the check. On September 29, 1972, Rogers transferred corporate funds, in the amount of the purchase price, from Liberty Investors' accounts to his personal bank account to cover the check issued to Gunn. Rogers testified that the Liberty Investors' check was signed by him and that the Board of Directors of Liberty

Investors had authorized him to take this action. The Board members allegedly authorizing this action were those members who became Directors on September 25, 1972.

There is a dispute as to whether Rogers was named as the President and a member of the Board of Directors at the meeting of Directors which was also held on September 25, 1972, but Rogers admits that he was acting as general manager of the corporation after that date.

The three Arizona corporations whose stock Roger sold to Liberty Investors were First Equity Corporation, National Agency Company, and First International Corporation. Rogers was the controlling stockholder of all three of these corporations. The prime asset of these three corporations was an Arizona insurance company, International Bankers Life Insurance Company, and the purported purpose of the stock purchases was to give Liberty Investors a controlling interest in the insurance company.

In May, 1972, International Bankers Life Insurance Company had surrendered its certificate to do business in Arizona. On June 28, 1972, the Insurance Commissioner of Arizona instituted receivership proceedings against the company. The insurance company was placed in receivership by the Superior Court of Maricopa County, Arizona, on July 7, 1972, several months prior to the Liberty Investors' stock purchase.

Following the sale of stock to Liberty Investors, the Oklahoma State Insurance Commission became aware of the transaction and started an investigation into the status of Liberty Investors. While this investigation was being conducted, Liberty Investors' Board of Directors held a meeting at which Rogers executed an agreement entitled "Secured Guarantee." By this instrument Rogers guaranteed to First Equity Corporation and National Agency Company, as wholly owned subsidiaries of Liberty Investors, that the investment of these corporations in the capital stock of First International Corporation and its

subsidiary, International Bankers Life Insurance Company, and Arizona corporation, had a present value of not less than $437,683.20. The Secured Guarantee also provided that should the Board of Directors of Liberty Investors determine on or before December 31, 1973, that its investment, through its wholly owned subsidiaries, in First International Corporation ·and International Bankers Life Insurance Company, did not have a value of $437,683.20, Rogers guaranteed that he would pay the wholly owned subsidiaries, in cash and on demand, the difference between the actual value or value received and $437,683.20. The Secured Guarantee specified that it was secured by the physical pledge of 1,282,691 shares of the common capital stock of Liberty Investors.

A special meeting of the Board of Directors of Liberty Investors was held November 20, 1972, at which Rogers acted as Chairman. The Directors unanimously adopted a resolution providing that the Secured Guarantee in favor of First Equity Corporation and National Agency Company, executed by Rogers November 7, 1972, be amended to run directly in favor of Liberty Investors, rather than in favor of the two wholly owned subsidiaries. Rogers signed and approved the minutes of this meeting.

On November 8, 1972, the day following execution of the Secured Guarantee by Rogers, the State of Oklahoma, ex rel Joe B. Hunt as Insurance Commissioner, instituted this receivership action against Liberty Investors by filing its Application for Order Appointing Receiver and Temporary Restraining Order, and an Order to Show Cause and Temporary Restraining Order was entered by the Trial Court on that date.

Following proceedings before the Trial Court and an original proceeding in the Supreme Court, the Trial Court issued an Order and Injunction on April 3, 1973, appointing the State Insurance Commissioner as Receiver for Liberty Investors, and providing for the appointment of Patrick A.

Williams as an Assistant Insurance Commissioner and Assistant Receiver.

On December 20, 1973, the Assistant Receiver filed an Application for Permission to Make Demand Pursuant to the Secured Guarantee. This Application set forth the facts concerning Liberty Investors' purchase of the Arizona companies' stock from Appellant Rogers, the execution of the Secured Guarantee by Rogers, and amendment thereof, and the fact the Assistant Receiver held 1,282,691 shares of Liberty Investors' stock pledged by Rogers as security pursuant to the Secured Guarantee. The Application also set forth that the Assistant Receiver had made the determination that the stock of First International Corporation and International Bankers Life Insurance Company owned by Liberty Investors had a value of ZERO DOLLARS, based on evidence described in the Application.

On December 20, 1973, pursuant to the Assistant Receiver's Application, the Trial Court issued an Order finding the Assistant Receiver had authority to exercise the functions of the Board of Directors and, thus, to make the determination that the stock guaranteed by Rogers had a value of zero dollars, and to make demand on Rogers in accordance with the terms of the Secured Guarantee.

The Order authorized the Assistant Receiver to make demand on Rogers for payment of the $437,683.20 guaranteed by the Secured Guarantee, on or before December 31, 1973, and, in the event of nonpayment, ordered Rogers to appear at a hearing February 8, 1974, to show cause why Liberty Investors should not be allowed to retain the stock Rogers had pledged.

The record reflects that the Order and Application were timely served on Rogers and his attorney, by mailing copies to them by certified mail, return receipt requested, and by the verified Proof of Mailing filed in this case.

Rogers failed to pay the $437,683.20 to Liberty Investors by December 31, 1973. At the show cause hearing set for February 8, 1974, the Trial Court granted Rogers a continuance for the purpose of submitting written objections to the Trial Court's order of December 20, 1973. The hearing was reset for March 8, 1974.

Appellant filed objections under the title "Multiple Pleadings" March 4, 1974, asserting he was not a proper party to the proceedings before the Trial Court, that the Assistant Receiver's reliance on the terms of the Secured Guarantee was in conflict with a position taken in previous proceedings before the Supreme Court, and that the Assistant Receiver had not complied with the applicable statutory provisions in the foreclosure proceedings.

Rogers failed to appear, either personally or by counsel, at the show cause hearing on March 8, 1974. The Trial Court entered an order stating that it had considered the written objections filed on behalf of Rogers and had overruled each of those objections. The Trial Court specifically found that Rogers had, on several occasions, appeared before the Court and requested affirmative relief in the receivership action, thereby entering a general appearance and waiving the right to challenge the jurisdiction of the Court over his person. Additionally, the Trial Court determined that it had jurisdiction over the shares of stock which constituted the subject matter of the foreclosure proceedings, and that the Assistant Receiver had complied with statutory provisions in foreclosing on the pledged stock. The Court decreed Liberty Investors was entitled to retain the 1,282,691 shares pledged to it under the terms of the Secured Guarantee and ordered the Assistant Receiver to take the necessary action to transfer legal title to the stock to Liberty Investors.

On April 9, 1974, Rogers filed a Special Appearance and Motion to Vacate the Trial Court's Order of March 8, 1974. This Motion was heard April 23, 1974, and the Court found none of the issues raised in Rogers' Motion was sufficient grounds for vacating the judgment and order. The Court specifically found that both Rogers

and his counsel had notice of the March 8, 1974, hearing by both mailing and publication. The Trial Court noted the Motion to Vacate was not filed within the thirty day period required by 12 O.S. 1971 § 1031.1, but did not base its decision on that factor alone. Instead, the Court reviewed the earlier proceedings and concluded that no irregularity of law or other reason for vacating its earlier judgment and order had been stated by either Rogers' motion or argument before the Court. Appellant's appeal is from this denial of his Motion to Vacate.

Rogers contends that (1) the judgment rendered by the Trial Court was without force because the Court did not have personal jurisdiction over him; (2) that the Court breached his constitutional rights by not giving him notice and an opportunity to be heard in the proceeding in which the Court was to decide the status of his personal property; (3) that there was a defect in parties in that he was not a party to the receivership action; (4) that all appearances made were in an official capacity, as mere representative of Liberty Investors; (5) that in previous pleadings the State contended that the Secured Guarantee was void because the stock which Appellant pledged was not held by him, thus, the judgment is inconsistent with itself; and (6) that overruling his Motion to Vacate constituted prejudicial abuse of discretion.

On the other hand, Receivers of Liberty Investors contend (1) that the Trial Court was without jurisdiction to vacate its judgment as a result of the untimely filing of Rogers' Motion to Vacate; (2) that the Trial Court's denial of Rogers' Motion to Vacate was clearly not an abuse of discretion; (3) that the Trial Court had jurisdiction over Rogers and the property which was the subject matter of the action; (4) that the foreclosure proceedings were conducted in compliance with constitutional and statutory provisions; and (5) that the Assistant Receiver was not estopped to enforce the Secured Guarantee as a result of allegedly inconsistent arguments made in earlier proceedings before this Court.

■ In support of Rogers' position that the Trial Court did not have personal jurisdiction over him and could not render a personal judgment against him, he cites previous decisions of this Court such as *Osborn v. White Eagle Oil Co.*, 355 P.2d 1041 (Okl.1960). The basic issue in *Osborn*, supra, was whether or not a non-resident who had not been personally served in Oklahoma, did not ask for affirmative relief, and did not make a general appearance, was within the jurisdiction of the Court sufficient to sustain a personal judgment against him. The Court answered the issue in the negative. Appellant argues that although he is a resident of Oklahoma he has not received personal service, or any kind of service, has not asked for affirmative relief in his personal capacity, but merely in an official capacity, and has not made a general appearance nor waived a special appearance.

Receivers of Liberty Investors point out that Rogers did in fact make appearances in the receivership action in his personal capacity on several occasions.

The record reflects that Rogers appeared before the Trial Court on several occasions during the course of the receivership proceedings. On November 21, 1972, Rogers appeared as a witness before the receivership court and gave extensive testimony. On May 22, 1973, Rogers filed a pleading entitled "Motion for Return of Stock" in the receivership action, wherein he designated himself as "Petitioner" and requested the Trial Court to order the Assistant Receiver to return to Rogers' duly authorized agent the shares of Liberty Investors' stock that had been pledged as security for the Secured Guarantee. On September 7, 1973, Rogers filed a verified pleading in the receivership action entitled "Proof of Claim," wherein he claimed Liberty Investors owed him $111,387.72, in his individual capacity, and requested the Trial Court to order payment of such funds to him. Jan-

uary 2, 1972, Rogers filed a pleading in the receivership action entitled "Objection to Sale," wherein he objected to the court-ordered sale of certain real property, previously his personal residence in Phoenix, Arizona, sold by him to Liberty Investors simultaneously with the sale of stock in the three Arizona corporations.

We think the above instances clearly indicate Rogers sought affirmative relief in his individual capacity in the receivership action. Rogers' assertion that he appeared only in an official capacity is further refuted by the fact that his attorney of record, C. H. Spearman, Jr., on June 11, 1973, filed an Application to Withdraw as counsel for Liberty Investors for the reason that there might be a conflict existing between his representation of Liberty Investors and his representation of Rogers.

Having appeared before the Trial Court requesting affirmative relief in the receivership action, Rogers cannot now claim that Court had no personal jurisdiction over him. In *Porter v. Oklahoma Bacone College Trust,* 346 P.2d 335 (Okl.1959), certiorari denied 362 U.S. 927, 80 S.Ct. 754, 4 L.Ed.2d 746, rehearing denied 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019, the first syllabus by the Court states:

> "When a party makes an appearance in an action and asks affirmative relief, he thereby enters a general appearance in said cause and waives the right to thereafter challenge the jurisdiction of his person."

■ Furthermore, in an equitable proceeding such as the present receivership action, the jurisdiction of the Trial Court is based primarily upon the *res* which is in the possession and control of the receivership court. A receivership court which has acquired possession of particular items of property " . . . is vested, while it holds possession, with the power to hear and determine all controversies relating thereto." *Lion Bonding and Surety Company v. Karatz,* 262 U.S. 77, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923).

This general rule has been followed in Oklahoma in *Cusack v. Prudential Insurance Co.,* 192 Okl. 218, 134 P.2d 984 (Okl. 1943), wherein the Court quotes the following language from Clark on Receivers, 2nd Ed., p. 797, par. 584:

> " . . . 'To summarize, a court of equity taking custody of assets and placing them in the hands of a receiver may bring summary proceedings concerning such assets under the following circumstances:
>
> \*   \*   \*   \*   \*   \*
>
> "Second: *'As to third persons* and *neither officers of the court, nor parties to the suit,* possession or *custody by the court seems to be the determining factor* as to whether a summary or plenary suit must be brought. Possession need not be physical but may be and sometimes is constructive possession. *If the court has such possession then the court can protect its possession by summary process even against their persons."* (Emphasis ours)

■ The *Cusack* case, supra, indicates possession of the stock certificates is sufficient to bring an individual such as Rogers before the Court and make him a proper party in a summary proceeding. The only requirement is that proper notice of the proceedings be provided to such party in order that he have adequate opportunity to protect his interests.

In the instant case, the Assistant Receiver had both possession and control of the stock pledged by Rogers as security for his personal guarantee. 36 O.S.1971 § 1814(B) provides in pertinent part that the Insurance Commissioner as Receiver:

> " . . . shall be vested by operation of law with the title to all of the property, contracts, and rights of action . . . of the insurer, wherever located, as of the date of entry of the order directing him to rehabilitate . . . a domestic insurer . . . ."

The stock certificates which are the subject of this action were physically pledged

to Liberty Investors and placed in the company's possession by Rogers. This clearly constituted either property or a right of action within the possession and control of the Receiver in accordance with the above statute.

■ Rogers urges the judgment should be vacated because he was denied due process of law by being denied notice and an opportunity to be heard before being deprived of his property. He argues that the Receiver's Application to Make Demand Pursuant to the Secured Guarantee was filed the same day the Court issued its order stating Rogers owed the Receivers $437,683.20 in cash and that if Rogers failed to pay said sum the Receivers were entitled to retain his shares of stock. He contends this order was entered without prior notice and hearing being afforded him.

The record reflects this is a misstatement of fact. Both the order of December 20, 1973, setting the show cause hearing, and the Assistant Receiver's Application were mailed not only to Rogers, at both his last known home and office addresses, but also to his attorney of record at that time, C. H. Spearman, Jr. The Trial Court specifically found, in its judgment order dated March 8, 1974, that the order and application had been served on Rogers at his last known address by certified mail. Such a finding should not be disregarded by this Court unless clearly erroneous. *Oklahoma Company v. O'Neil,* 440 P.2d 978, 984 (Okl.1968). Additionally, Rogers had actual notice of the order and application and their contents as shown by his counsel's appearance at the February 8, 1974, hearing, at which time a continuance of the hearing was requested and granted Rogers' counsel. We believe this is sufficient to show Rogers had actual notice of the proceedings.

Rogers also cites such cases as *Sniadach v. Family Finance Corporation,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972), in support of his position that he was denied due process. We find these cases are not in point and have no applicability to the case at bar.

■ There was no prejudgment seizure of Rogers' property in this action. The Liberty Investors' stock was physically endorsed by Rogers and voluntarily delivered to Liberty Investors as security pursuant to the terms of the Secured Guarantee, several months prior to the appointment of the Receiver. Upon appointment as Receiver, the Receiver took possession of the stock certificates as an officer of the Court and pursuant to statutory authority. See 36 O.S.1971 § 1814(B). Such possession was necessary to maintain Liberty Investors' security interest in the stock. See 12A O. S.1971 §§ 9–304 and 9–305. This could not be considered a prejudgment seizure of property.

■ Nor can the Trial Court's order of December 20, 1973, constitute a taking of property, as Rogers alleges, without due process. The order stated the Receiver was authorized to make demand on Rogers for payment of the amount he had guaranteed, and that, if such demand was not complied with by a date certain, Rogers should appear at a hearing on February 8, 1974, to show cause why his property should not be retained by the Receiver in accordance with the express terms of the Secured Guarantee. No taking occurred in fact until after the hearing of March 8, 1974, when the matter was adjudicated by the Trial Court. Both Rogers and his counsel were mailed notice of these hearings and indeed had actual notice of them, as we previously noted, by Rogers' counsel's request for a continuance of the show cause hearing from February 8 to March 8, 1974, which request was granted. For these reasons, we do not think Rogers was denied due process.

Receivers of Liberty Investors contend that Rogers' Motion to Vacate was untime-

ly filed. In the order denying the motion, dated April 23, 1974, the Trial Court specifically found that the Motion to Vacate was not filed within the period of time allowed by the applicable statutory provisions.

▮ The reasons for which a court can vacate or modify its judgments and orders are set forth in 12 O.S. § 1031. Rogers' motion sets forth the reasons contained in subdivisions three, four, seven, and nine of § 1031. A careful reading of 12 O.S. § 1033 indicates that proceedings to vacate judgments under those categories in § 1031 must be by verified petition, setting forth a defense to the action, and served with duly issued summons. In the instant case, Rogers' motion was not in the form of a petition, was not verified, contained no defense to the stock foreclosure action, and no summons was issued or served with it. We think this is dispositive of Rogers' contentions under categories four (fraud in obtaining the judgment or order), seven (unavoidable casualty or misfortune), and nine (for taking judgment for more than was due the plaintiff).

▮ Rogers' Motion to Vacate also claims "irregularity of law occurring at the trial" as reason for vacating the judgment. This language is not included within 12 O.S.1971 § 1031, but is set forth in 12 O.S. § 651 as cause for a new trial, if filed within the time prescribed in 12 O.S. § 653 (which is 10 days from the date of the order). Here, the Motion to Vacate was filed April 9, 1974, more than 10 days after the order of March 8, 1974. Therefore, the claim of "irregularity of law" was untimely filed and does not constitute a basis for this appeal.

▮ Insofar as the Motion to Vacate is based on the reasons set forth in subdivision three of § 1031 (mistake or omission of the clerk or irregularity in obtaining a judgment), it was not timely filed because 12 O.S.1971 §§ 1031.1 and 1032 provide that motions under this category must be filed within 30 days after the rendition of the judgment.

12 O.S. § 1031.1 provides:

"Within thirty (30) days after the rendition of a judgment, the court, of its own initiative or on motion of a party, may correct, open, modify or vacate the judgment. The court may prescribe what notice, if any, shall be given."

12 O.S. § 73 provides for computation of time:

"The time within which an act is to be done shall be computed by excluding the first day, and including the last; if the last day be Sunday, it shall be excluded. R.L.1910, § 5341."

As the Trial Court noted in its order of April 23, 1974, the Motion to Vacate was filed on Tuesday, April 9, 1974. The order sought to be vacated was rendered March 8, 1974. The Motion to Vacate was filed on the 32nd day following the order and was out of time.

In *American Bank of Oklahoma v. Adams,* 514 P.2d 1191 (Okl.1973), it was held:

". . . after the period of time permitting the court to modify the judgment on its own motion expires, the court is without discretion or jurisdiction to vacate or modify a judgment which is not void on its face. Unless there is substantial compliance with the provisions of the statutes prescribing grounds upon which the district court has power to vacate or modify its own judgment or orders, the statutory power of the court ceases at the expiration of the time designated by statute. *Hawkins v. Hurst,* 467 P.2d 159, 160 (Okl.1970); *Fowler v. Goldfeder,* 418 P.2d 317, 319 (Okl.1966); *Stevens Expert Cleaners & Dyers, Inc. v. Stevens,* 267 P.2d 998, 1000 (Okl. 1954)."

▮ Rogers further contends that overruling his Motion to Vacate constituted a prejudicial abuse of discretion. The Trial Court's decision either vacating or

refusing to vacate a judgment will not be disturbed unless an abuse of descretion clearly appears. *Midkiff v. Luckey,* 412 P.2d 175 (Okl.1966). See also *Maxey v. Welch,* 315 P.2d 767 (Okl.1957). This rule is applicable in situations such as the present case, where the judgment was rendered after Rogers and his counsel failed to appear at the show cause hearing on March 8, 1974. In *Sautbine v. Jones,* 161 Okl. 292, 18 P.2d 871 (Okl.1933), at page 872, the Court said:

> "It is well settled in this jurisdiction that a proceeding to set aside a judgment rendered upon failure of one of the parties to appear is addressed to the sound judicial discretion of the trial court and the ruling thereon will not be disturbed, unless it appears from the record that the trial court abused its discretion. (cases cited)

> "It is also the law in this state that failure to receive notice of the setting of the case does not of itself constitute a sufficient ground upon which to vacate a judgment. (cases cited)."

The show cause hearing was originally scheduled for February 8, 1974. Copies of the Assistant Receiver's Application to Make Demand Pursuant to the Secured Guarantee and the Trial Court's Order setting the matter for hearing on that date were mailed December 20, 1973, to both Rogers and his attorney of record by certified mail, return receipt requested. Rogers had actual notice of the hearing, as evidenced by the fact that his present counsel appeared before the Trial Court on February 8th, notifying the Court he had only recently been retained as counsel for Rogers and that it would be necessary for him to have additional time to prepare for the hearing. The request was granted and hearing reset for March 8, 1974.

Further evidence of actual knowledge by Rogers of the hearing date is shown by the fact that on March 4, 1974, written objections to the Assistant Receiver's Application were filed on Rogers' behalf by his present counsel.

Moreover, on the date of the hearing (March 8, 1974), the Court was informed that a telephone message for Rogers' counsel from his law office had been received in the Court's chambers, indicating, as the Trial Court noted in its order:

> ". . . that counsel's law firm had actual notice of the hearing date and expected counsel to be present at the hearing."

The Trial Court also indicated in its order of February 8, 1974, resetting the show cause hearing for March 8, 1974, that notice had been mailed to Rogers and his counsel on February 22, 1974, the date of filing, and published in the Tulsa Daily Legal News from February 22, 1974, through March 8, 1974, inclusive. The order of March 8, 1974, granting the Receiver's Application was also mailed to Rogers and his counsel upon filing. We think the evidence conclusively shows notice of the March 8th hearing. It is difficult for this Court to see how the subsequent denial of Rogers' Motion to Vacate could constitute a manifest abuse of discretion.

The propriety of the Trial Court's ruling is even more apparent when Rogers' Motion to Vacate sets forth such reasons as "mistake, neglect or omission of the Clerk," and yet no evidence is set forth in the Motion itself, nor argued before the Trial Court, nor described in Rogers' Brief on appeal.

The same is true as to all other reasons listed in Rogers' Motion to Vacate. No allegations or evidence set forth particular acts which would constitute: "irregularity in obtaining a judgment order"; "fraud practiced by the successful party in obtaining the judgment order"; or "for taking judgment for more than was due plaintiff, when defendant was not summoned or otherwise legally notified of the time and place of taking such judgment."

Rogers' Brief states failure to appear March 8th was caused by "unavoidable casualty or misfortune." However, neither the Trial Court nor this Court are enlightened as to the nature of any particular casualty or misfortune.

Faced with the above unsupported allegations and assertions, merely parroting statutory language, on the one hand, and the numerous facts before the Court contraverting the reasons put forward by Rogers and supporting its previous judgment, on the other, the Court's refusal to grant the Motion to Vacate cannot be said to constitute a manifest abuse of discretion.

■■ Rogers next asserts that the Receiver is now estopped from enforcing the Secured Guarantee by virtue of the fact that in an earlier proceeding before the Supreme Court, requesting Original Jurisdiction and a Writ of Prohibition, the Oklahoma Insurance Commission asserted that the Secured Guarantee was valueless because Rogers did not hold equitable ownership to the Liberty Investors' stock pledged as security, as it was purchased with corporate funds.

In support of his position, Rogers cites *State v. Keller,* 264 P.2d 742 (Okl.1953), which quotes from *Territory v. Cooper,* 11 Okl. 699, 69 P. 813, wherein it was said:

" 'Where one voluntarily assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he will not thereafter, because his interests have changed, be permitted to assume a contrary position, *to the prejudice of a party who acquiesced in the position formerly taken by him.'* " (Emphasis ours)

. It should be noted that Rogers did not *acquiesce* in the position formerly taken by the State, but even if he had, the result would be the same.

There are exceptions to or limitations on the general rule above stated. And there are certain essentials to the establishment of such estoppel as was recognized by this Court in the case of *Barnes v. Clark,* 364 P.2d 693 (Okl.1961), quoting from the earlier case of *Colvert Ice Cream & Dairy Products Co. v. Citrus Products Co.,* 179 Okl. 285, 65 P.2d 455 (1937), wherein it was held:

" 'Documentary evidence of previous inconsistent claims made by the plaintiff concerning the claim sued upon is properly admissible in evidence, but such evidence is not conclusive and may be rebutted and explained; and where it is of strong probative value, it nevertheless is not sufficient in law unless it is further established: (1) Such claim was successfully maintained in the former action; (2) such claims are clearly inconsistent; (3) a final judgment must have been rendered; (4) the parties and questions are the same; (5) the party pleading estoppel must have been misled and have changed his position; and (6) it must be unjust to permit the party to change positions.'

"See also *Magnolia Petroleum Co. v. Ouart,* 200 Okl. 258, 192 P.2d 698, and *Maxfield v. Maxfield,* Okl., 258 P.2d 915."

In the earlier proceeding in which the Insurance Commissioner sought a Writ of Prohibition, he filed a pleading entitled "Reply Brief of Petitioner," to which an amended statement of facts was attached containing the following language:

"From Exhibit 'B', referred to hereinabove the court can readily see that Rogers could not pledge his stock in 'the company' since he fraudulently purchased same with company funds and therefore was not vested with any equitable ownership therein."

Analyzing this language in light of the limitations contained in the *Barnes* case, supra, emphasizes the fatuousness of Rogers' position. A careful reading of this Court's opinion in the earlier proceeding,

contained with the record on appeal, indicates the decision was not in any way based on the statement of fact in question. Therefore, the first essential element set forth in the *Barnes* and *Colvert* cases, supra, cannot be established.

Further, it seems unlikely Rogers was misled or suffered detriment by the assertion of the two allegedly inconsistent statements in view of the fact the stock was fraudulently purchased with funds of Liberty Investors. No apparent injustice will result by allowing the Receiver to enforce the Secured Guarantee in accordance with its terms, after having questioned Rogers' equitable ownership of the stock as security because of the fraudulent manner by which he obtained such stock. Thus, elements five and six are not established.

In *United States v. Mills,* 372 F.2d 693 (10th Cir., 1966), it was held that where the government had taken a position that no genuine material factual issue existed only for the purpose of presenting a legal theory in its motion for summary judgment, it was not estopped by recitals of its motion to claim existence of an issue of material fact after its motion was overruled.

We, therefore, find that Rogers has failed to establish the essential elements of estoppel as set forth in *Barnes* and *Colvert,* supra. Thus, the Receiver was not estopped from enforcing the Secured Guarantee due to the language contained in the Reply Brief submitted by the State in the earlier proceedings.

In view of the authorities cited and the principles discussed, together with the facts of record, we hold the Trial Court's original judgment and its denial of Rogers' Motion to Vacate were correct.

Judgment affirmed.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.