In the Matter of FOX METAL INDUS-
TRIES, INC., Bankrupt.

C. B. MESSENGER, Receiver, Petitioner-
Appellee,

v.

FRONTIER PLUMBING & HEATING
CO., Respondent-Appellant.

No. 71-1136.

United States Court of Appeals,
Tenth Circuit.

Jan. 21, 1972.

Paul D. Rubner, of Feder & Morris, Denver, Colo. (Walter C. Urbigkit, Jr., Cheyenne, Wyo., with him on the brief), for Frontier Plumbing & Heating Co.

James C. Bull, Denver, Colo., for appellee.

Before SETH, HAMLEY,* and Mc-WILLIAMS, Circuit Judges.

SETH, Circuit Judge.

Appellant, Frontier Plumbing & Heating Co., was the major mechanical subcontractor on a building project at Northern Colorado University. On February 19, 1969, Frontier and Fox Metal Industries, Inc. entered into a contract under which Fox agreed to perform sheet metal work on the building as Frontier's subcontractor. The contract was in the amount of $404,456.00 and provided that the subcontractor (Fox) would progress on this work as rapidly as Frontier "may judge that the progress of the structure will permit." The contract also provided that if Fox fell behind in its work and did not employ additional men and materials to get back on schedule, Frontier would have the right to furnish materials and employ additional men and charge the expense thereof against Fox.

Fox performed the contract until December 1969. At that time Fox filed a petition under Chapter X of the Bankruptcy Act, and in January 1970 the District Court appointed appellee Messenger the Receiver to collect Fox's accounts receivable and make an audit for the purpose of determining whether a Chapter X reorganization seemed feasible.

Fox's performance on the contract started to lag at this time. In May 1970 the president of Frontier wrote a letter to the Receiver in which he proposed a new schedule that would allow timely completion of the job. In this letter, Frontier stated its intention to make weekly or biweekly payments to the Receiver in order to finance the job as it progressed. The letter also stated that these advances would be discontinued in case the job fell behind again. Fox again fell behind schedule, and the supervising architects disallowed progress payments to Frontier.

In August 1970 Frontier wrote two checks to Fox pursuant to the May agreement. These checks have become the center of these proceedings. The checks were returned to Fox unpaid, due to insufficient funds. Frontier then stopped payment on the checks, advising Fox that certified checks would be given to Fox in payment of the stopped checks if performance was caught up.

At a later time Frontier paid the Receiver $7,000.00 for the release of materials belonging to Frontier but held in Fox's shop. Frontier has received no credit against its claim for this money. Frontier's president testified that Frontier's payments to Fox on the May 1970 agreement ran about ten per cent over the monthly figure agreed upon. He also testified that Frontier had paid some of Fox's bills for materials, adding to the amount owed Frontier by Fox. In all, Frontier estimated that Fox owed it about $40,000 on the contract, and this the appellant attempted to assert as a setoff.

When Frontier stopped payment on the two August checks to Fox, the Receiver commenced a proceeding to require Frontier to show cause why it should not be adjudged in contempt of court for dishonoring the checks. Frontier filed a motion to dismiss, alleging lack of jurisdiction under the Bankruptcy Act, asserting that a summary hearing as provided in said Act was not proper in such a case, and that a court of plenary jurisdiction should have been resorted to by the Receiver. A hearing was held and evidence was heard on the question of whether a bona fide adverse claim existed. The District Court decided it had jurisdiction, since Frontier had knowingly dealt with receivership property. Judgment was then rendered for the Receiver in the amount of the two checks. From this judgment Frontier appeals.

---

* Of the Ninth Circuit, sitting by designation.

## I.

Frontier's first contention is that the District Court did not have summary jurisdiction under the Bankruptcy Act.

■ Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876. In Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391, the petitioner made a claim against the funds of the bankrupt, which funds were in the legal possession of the court. In the present case, it is the bankrupt, through its Receiver, which has made a claim against an alleged debtor. It is consequently a harder question to determine if the property here was in the actual or constructive possession of the court. Frontier contends that the two checks in question are not "property," but mere choses in action, and as such are not assignments of funds to the Receiver.

In Fitzgerald v. W. F. Sebel Co., 295 F.2d 654 (10th Cir.), the test for summary jurisdiction in the Tenth Circuit is stated: "If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.'" (Quoting from Cline v. Kaplan, 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97). See also City and County of Denver v. Warner, 169 F.2d 508 (10th Cir.).

A line of cases beginning with In re Wiltse Bros. Corp., 357 F.2d 190 (6th Cir.), is urged as being significant in this case. These cases stand for the proposition that a debt owed a bankrupt is an intangible type of property which can be in the actual or constructive possession of the court. A careful reading of these cases, however, discloses that this concept of possession of property applies only in a situation where a third party has some security interest in the money owed the bankrupt by its debtor. Thus this line of cases is not of great significance on the issue before us.

In his memorandum opinion, the trial judge recognized the difficulty in the property concept and said it is irrelevant "whether or not a check is a piece of property or assignment of funds or anything of the kind, because I'm looking through the checks as to what actually the relationship of the parties was. And the thing that impresses me is—I just am convinced that there was an imposition on the receiver and on the property of the court as far as these people were concerned. They sought to become whole at the expense of the receivership and to let them get away with it, as I say, would give them property to which they are not equitably entitled." The trial court indicates in this passage that summary jurisdiction of the Bankruptcy Court should be asserted because Frontier, which made an agreement with the Receiver in May 1970, breached that agreement when it refused to render to Receiver the value of the two checks. The trial court's holding is that this agreement with the court-appointed Receiver, and its performance, is a part of the operation of the receivership under the court's supervision. It is thus a participation by Frontier with the Receiver in the function of the receivership itself, and not with Fox. Such participation would, under this theory, place Frontier within the court's jurisdiction over the receivership.

Governor Clinton Co. v. Knott, 120 F. 2d 149 (2d Cir.), was a somewhat comparable case. There the bankruptcy court had directed officers of the Hotel Governor Clinton, which was undergoing a reorganization, to give a management corporation control over the operation of the hotel. Unknown by the court, one-third of the sum received by the management corporation each month was paid to the officers who had remained in possession of the property. In ruling

that the court had summary jurisdiction, the court said:

". . . [S]ummary jurisdiction may be invoked for purposes other than to protect property within the actual or constructive possession of the court. Here a contract was made with the debtor in possession and a fraud worked on its estate through a common conspiracy among the respondents. This amounts to a fraud and imposition upon the court itself; and in such cases the court undoubtedly has summary jurisdiction to protect itself and the interests of the persons and property within its custody."

In the instant case there is no allegation of fraud, but the refusal to honor an agreement with the Receiver worked an imposition on the court. Likewise in In re Hollingsworth & Whitney Co., 242 F. 753 (1st Cir.), the trustees in bankruptcy for a Maine corporation had made an agreement with a firm, which agreement the firm failed to carry out. There was no issue of fraud. Answering the contention of the firm that the court did not have summary jurisdiction to specifically enforce this contract, the court said:

". . . [T]he agreement was unmistakably made with officers of that court appointed by it in a pending bankruptcy case, and it can only be regarded as made and approved by the court for the purposes of that case. An agreement so made is to be regarded as an agreement with the court wherein the case is pending. (Citations omitted). And while it remained in force, the court with whom it was so made could order it complied with by either party thereto, without an independent suit brought upon it for that purpose. . . ."

See also Jackson v. Moore, 348 F.2d 437 (5th Cir.).

Appellant cites In re Process-Manz Press, Inc., 369 F.2d 513 (7th Cir.), as standing for the proposition that even an assertion of fraud does not deprive an adverse claimant of his right to proceedings in plenary suit when possession is absent and a substantial adverse claim is asserted. By reason of the unique facts there presented we do not consider the case to be authority contrary to the cases considered above.

■ We must hold that the trial court properly exercised its summary jurisdiction in the issue concerning the unpaid checks, by reason of appellant's participation in the receivership as above indicated, and its imposition on it or interference therewith.

## II.

Appellant also contends that the District Court acted improperly in ruling on the merits of the Receiver's claim, and that it was denied due process because it had no opportunity to formulate pleadings, effect discovery, or to adequately prepare its case. This is no more than the difference between summary jurisdiction and a plenary action. See Central Republic Bank & Trust Co. v. Caldwell, 58 F.2d 721 (8th Cir.). See, generally, 2 Collier on Bankruptcy, § 23.02.

■ The record discloses that the Receiver's petition for an order to show cause was drawn up on September 18, 1970. Frontier asserts that no copy of this petition was delivered to it, but also admits that it was present at the September 18th hearing where the court set another date for a hearing on the matter. On September 28, 1970, appellant filed its motion to dismiss. In the hearing conducted October 5, 1970, the District Court Judge expressly stated that he would consider both the jurisdictional issue and the merits of the case. The court also took pains to make counsel for appellant aware that he would be given time to present his case fully. Even if appellant had been prejudiced by having too little time to prepare for the October 5th hearing, the fact that said hearing was continued to October 12th, giving appellant an additional week to prepare, vitiates the point.

■ Appellant contends that it restricted itself in these hearings to argu-

ing the question of summary jurisdiction and that it was caught by surprise when the court's October 28th judgment included judgment on the merits. It seems that the appellant should be charged with knowledge that an adverse decision on its argument against summary jurisdiction would result in a review of the merits. Appellant simply gambled that it would prevail on the jurisdictional argument. The court in Process-Manz Press, Inc., supra, referred to this type of strategy when it said that the appellant in that case ". . . was not required to participate on the merits, but was entitled to take the risk that it was wrong on the jurisdictional question it would ultimately have judgment entered against it upon the evidence that was adduced before the referee." 369 F.2d 513 at 517.

### III.

Appellant's final argument is that the court erred in ruling that it could not assert a counterclaim or setoff in the summary proceedings. Appellee, on the other hand, points to the District Court Judge's ruling that Frontier could assert its counterclaim. It appears from the record that while the hearing was in progress, it was understood that Frontier *was* asserting a setoff. Examination of Mr. Federer, president of Frontier: "Q. Are you asserting a set-off against this amount of money today? A. Yes, I feel we overpaid Fox Metal Industries and they owe us about $40,000." The attorney for the Receiver indicated that he was aware of the fact that Frontier was asserting a setoff, for he stated that Frontier had stopped payment on the checks because it anticipated a contractual breach by Fox. In other words, he acknowledged that Frontier's justification for declining to honor the checks was its claim to a greater amount of money from the receivership.

In the trial court's memorandum opinion, it was concluded that Frontier should pay the amount of the two checks to the Receiver. As regards Frontier's setoff claim, the court said: "They are just going to have to pursue these under the contract in the same manner that other creditors will pursue theirs and you can anticipate that this receivership is going to change to bankruptcy in a very short time." In this connection, the record shows that the petition under Chapter X of the Bankruptcy Act was filed in December 1969. Only after this date did Fox's performance on the contract with Frontier deteriorate, and Frontier had no claim against Fox prior to the filing.

█ It appears, then, that the court acknowledged Frontier's right to then assert a claim, and that during the proceedings it was apparently understood that setoff was being asserted. However, the court in the end declined to consider the setoff claim, and this in its discretion may be done. In a case such as this one, where the complaining party is the Receiver, to allow the respondent to assert his setoff or counterclaim, and to summarily adjudicate said setoff or counterclaim could work an injustice on the other creditors of the receivership. In Tucson House Construction Co. v. Fulford, 378 F.2d 734 (9th Cir.), the court held that the provision of the Bankruptcy Act governing mutual debts or mutual credits between the estate of a bankrupt and a creditor is permissive rather than mandatory, and is to be applied by the courts of bankruptcy in the exercise of discretion consistent with general principles of equity. Thus the trial court could here refuse to consider it in the summary proceeding, and to require as it did that the claim it represented be asserted in other proceedings. The court below thus apparently felt that an adjudication of Frontier's setoff claim on its merits would be prejudicial to Fox's other creditors. At the time of the hearing, Fox had not been declared bankrupt.

We thus hold that the trial court had "summary jurisdiction," that the proceedings were conducted in accordance with prevailing practice, and that appellant had an adequate opportunity to meet the issues.

Affirmed.