James A. BOWLES, Receiver, Appellee and Cross-Appellant,

v.

CITY NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, Appellant and Cross-Appellee.

No. 46694.

Court of Appeals of Oklahoma, Division 2.

April 1, 1975.

Rehearing Denied May 1, 1975.

Certiorari Denied June 24, 1975.

Released for Publication by Order of Court of Appeals, June 26, 1975.

Richard L. Bohanon, Oklahoma City, and Don R. Nicholson, II, Oklahoma City, for appellee and cross-appellant; Bohanon & Barth, Oklahoma City, and Eagleton, Nicholson & Pate, Oklahoma City, of counsel.

Don J. Harr, Don Hamilton, Don J. Harr & Jon L. Hester, Oklahoma City, for appellant and cross-appellee.

BACON, Judge.

The facts of this case are lengthy and involve several parties and two actions which were consolidated for trial and appeal. Case numbered C–72–349 in the District Court of Cleveland County, Oklahoma, styled James A. Bowles, Receiver, Plaintiff, vs. T. H. Arter, Lakeside Heat-

ing and Air Conditioning, Inc., Defendants, has been consolidated with C–72–350 in the District Court of Cleveland County, Oklahoma, styled James A. Bowles, Receiver, Plaintiff, vs. T. H. Arter, Lakeside Plumbing, Inc., Defendants. Appellant cross-appellee, City National Bank and Trust Company of Oklahoma City was subsequently made a party defendant. James A. Bowles, Receiver, will hereinafter be referred to as "Receiver"; T. H. Arter will be referred to as "Arter"; Lakeside Heating and Air Conditioning, Inc., as "Lakeside Heating"; Lakeside Plumbing, Inc., as "Lakeside Plumbing"; City National Bank and Trust Company of Oklahoma City as "City Bank"; another entity, though not a party to this suit, Federal National Bank and Trust Company of Shawnee, Oklahoma, as "Federal Bank"; and one other entity, not a party, Pre-Fab Enterprises, Inc., as "Pre-Fab."

We will attempt to set forth only enough facts for an understanding of the issues we are deciding.

On June 21, 1971, Federal Bank loaned Pre-Fab $325,000 with Federal Bank filing financing statements and security agreements covering Pre-Fab's inventory, accounts receivable and moneys due as security for the loan. Federal Bank recorded the instruments on June 23, 1971.

On October 31, 1971, Arter as an individual, and as president of Lakeside Heating and as president of Lakeside Plumbing, executed two $200,000 promissory notes to Pre-Fab for the purchase of stock owned by Pre-Fab in Lakeside Plumbing and Lakeside Heating. These two notes were due "on or before June 1974."

Then on November 22, 1971, Pre-Fab (through its officers, one McGee and one Dickerson) borrowed from City Bank $350,000 and executed a promissory note for $350,000 to City Bank due on demand. Pre-Fab put up the two $200,000 Arter notes as security for the loan. On the back of the two $200,000 Arter notes, McGee endorsed, "Pay to the order of City National Bank & Trust Co. Okla. City by

Reece McGee, Chrm. of Board, Pre-Fab Ent., Inc." City Bank also filed financing statements and security agreements reflecting the transaction with Pre-Fab. Pre-Fab then used part of the money borrowed from City Bank and paid the Federal Bank note down to $157,500.

Thereafter, on March 16, 1972, Federal Bank told Arter that Federal Bank claimed the $200,000 notes as a result of Federal Bank's financing statement and security agreement on the assets of Pre-Fab. Arter conveyed this information to City Bank.

On March 21, 1972, Federal Bank sued Pre-Fab and its officers on the $157,500 unpaid balance on its loan to Pre-Fab. Attorneys for Federal Bank gave formal written notice on March 29, 1972, to City Bank of Federal Bank's claim on the two $200,000 notes held by City Bank. Federal Bank caused a receiver to be appointed for Pre-Fab and Receiver then started attempting to take control of the assets of Pre-Fab.

Two days after it received the written notice of Federal Bank's claim, on March 31, 1972, City Bank took a new note from Arter for $350,000 in place of the two $200,000 Arter notes City Bank held. For some undisclosed reason, City Bank maintained possession of the two $200,000 notes. On April 14, 1972, Arter sued Pre-Fab for fraud.

Then on June 2, 1972, Receiver sued Arter and Lakeside plumbing on one of the $200,000 notes and also sued Arter and Lakeside Heating on the other $200,000 note. These two suits were consolidated and the trial court issued a "Turnover Order" to City Bank, which was not yet a party to the lawsuits, directing it to turn over the two $200,000 notes to Receiver. City Bank was subsequently made a party to the suit by Receiver. Receiver alleged City Bank was liable for wrongfully disposing of the two $200,000 notes in that City Bank took in lieu of the two notes the $350,000 note from Arter on March 31, 1972, after notice of Federal Bank's claim.

Frank Ward, Senior Vice President of City Bank initially stated that when City Bank took the March 31, 1972, $350,000 note from Arter, this discharged and cancelled the two $200,000 Arter notes held by City Bank. Based on this admission, Receiver amended his petition and sued to recover $400,000 lost by Pre-Fab's estate for which he was the receiver. City Bank's officer Frank Ward then changed his mind, alleged his first statement about the two $200,000 notes being discharged and cancelled was a mistake and misunderstanding, and denied that the two $200,000 notes were compromised when Arter executed the March 31, 1972, $350,000 note. Arter, however, testified by deposition that he was to receive the two $200,000 notes when he executed the March 31, 1972, $350,000 note, but City Bank could not find them at the time and that he, Arter, never asked for them again.

Both City Bank and Receiver filed motions for summary judgment and the trial court sustained Receiver's motion. The trial court held City Bank had wrongfully disposed of the two $200,000 notes after notice of Federal Bank's claim and held City Bank liable for the $157,500 balance due Federal Bank on the Pre-Fab loan from Federal Bank. The trial court also concluded "that Arter is discharged from further liability on the two $200,000.00 notes by knowing acts of City National in violation of this plaintiff's [Receiver's] and the Shawnee bank's [Federal Bank's] rights."

City Bank appeals and Receiver cross-appeals, the latter urging the trial court erred in allowing credit against Receiver of amounts previously paid Federal Bank. In other words, Receiver contends the trial court should have held City Bank was liable for $400,000 which was the amount of assets belonging to Pre-Fab that City Bank "wrongfully disposed" of, instead of giving credit to City Bank for the $167,500 Pre-Fab had paid to Federal Bank, leaving the $157,500 balance on Federal Bank's loan. Receiver reasons he was in effect representing all of Pre-Fab's creditors, and not acting just for the benefit of Federal Bank, thus the trial court should not have given City Bank credit for moneys already received by Federal Bank.

We find the trial court erred in its basic conclusions, the first of which is that City Bank wrongfully discharged the two $200,000 notes after "constructive and actual notice of the recorded priority claimed by" Federal Bank.

First, Federal Bank's claim, as will be shown, cannot be accorded priority over City Bank's claim in the notes, and second, City Bank never "discharged" or "disposed" of the two notes. Federal Bank never perfected a security interest in the two notes because it never took possession of the notes, which is the only method of perfecting a security interest in the two notes. 12A O.S.1971 § 9–304.[1] (It is true Federal Bank might proceed against Pre-Fab for wrongfully disposing of assets by selling stock without Federal Bank's ap-

---

1. 12A O.S.1971 § 9–304:

"(1) A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in instruments (other than instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5).

"(2) During the period that goods are in the possession of the issuer of a negotiable document therefor, a security interest in the goods is perfected by perfecting a security interest in the document, and any security interest in the goods otherwise perfected during such period is subject thereto.

"(3) A security interest in goods in the possession of a bailee other than one who has issued a negotiable document therefor is perfected by issuance of a document in the name of the secured party or by the bailee's receipt of notification of the secured party's interest or by filing as to the goods.

"(4) A security interest in instruments or negotiable documents is perfected without filing or the taking of possession for a period of 21 days from the time it attaches to the extent that it arises for new value given under a written security agreement.

"(5) A security interest remains perfected for a period of 21 days without filing where a

proval, but that is quite beside the issues before us.) The fact Federal Bank filed a security interest in Pre-Fab's assets, accounts receivable, etc., *does not* constitute notice of the security interest in the notes to City Bank. 12A O.S.1971 § 9–309.[2] This is so, even if Federal Bank had filed a security interest in the two notes and not just Pre-Fab's assets, etc., because Federal Bank never had possession of the notes. Thus, we must conclude that the trial court erred in finding City Bank disposed of the notes after "constructive and actual notice of the recorded priority claimed by" Federal Bank.

█ Moreover, even if Federal Bank did have a "priority claim" in the two notes, it is undisputed that City Bank never discharged or disposed of them, and therefore could not be held liable for doing so. The obvious reason for this conclusion is that to discharge, cancel or renounce the notes, City Bank would have had to either surrender possession of the notes to Arter or in some apparent manner on the face of the notes cancel or mutilate them. 12A O. S.1971 § 3–605.[3] This City Bank never did. Instead City Bank maintained posses-

sion of the two notes until ordered by the trial court to turn them over to Receiver. At most, there was an unexecuted oral agreement between City Bank and Arter (and this is disputed) to cancel or return the notes to Arter. The undisputed fact is, however, that regardless of such agreement City Bank did in fact keep possession of the notes so that obviously the trial court erred in finding City Bank wrongfully discharged the two $200,000 notes.

█ Receiver's claim for the notes could only be premised upon the rights of either Pre-Fab or Federal Bank. Federal Bank had no priority claim over City Bank as previously discussed herein, and Pre-Fab endorsed the notes to City Bank in addition to using them as security for the $350,000 loan with City Bank. In these circumstances neither Pre-Fab nor Receiver would be entitled to the two notes until the $350,000 City Bank-Pre-Fab loan had been paid, releasing the security, to-wit, the two $200,000 notes. Therefore, Receiver has no claim against the notes and it was error for the trial court to rule in Receiver's favor against City Bank. We therefore find the trial court should have

secured party having a perfected security interest in an instrument, a negotiable document or goods in possession of a bailee other than one who has issued a negotiable document therefor
(a) makes available to the debtor the goods or documents representing the goods for the purpose of ultimate sale or exchange or for the purpose of loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with them in a manner preliminary to their sale or exchange; or
(b) delivers the instrument to the debtor for the purpose of ultimate sale or exchange or of presentation, collection, renewal or registration of transfer.
"(6) After the 21 day period in subsections (4) and (5) perfection depends upon compliance with applicable provisions of this Article."

2. 12A O.S.1971 § 9–309:
"Nothing in this Article limits the rights of a holder in due course of a negotiable instrument (Section 3–302) or a holder to whom a

negotiable document of title has been duly negotiated (Section 7–501) or a bona fide purchaser of a security (Section 8–301) and such holders or purchasers take priority over an earlier security interest even though perfected. Filing under this Article does not constitute notice of the security interest to such holders or purchasers."

3. 12A O.S.1971 § 3–605:
"(1) The holder of an instrument may even without consideration discharge any party
(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or
(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.
"(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."

sustained City Bank's motion for summary judgment.

■ The dispute between Arter and City Bank as to Arter's liability centers around their "agreement" to cancel the two $200,000 notes for the $350,000 note. City Bank denies the agreement and Arter asserts it. In discharging Arter from "liability on the two $200,000 notes," the trial court decided an issue not raised by the pleadings nor before the trial court, and therefore that judgment is vacated.

We reverse the trial court and remand the cause with directions to vacate the summary judgment entered for Receiver and vacate the judgment discharging Arter from further liability on the two $200,000 notes; sustain City Bank's motion for summary judgment; order the notes returned to City Bank; and for such other proceedings as may be required.

NEPTUNE, P. J., and BRIGHTMIRE, J., concur.