**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**WILSHIRE APARTMENTS, INC. (Fred Spencer, Receiver), et al.,**
**Defendants-Appellees,**

**Medical Center State Bank, Appellant.**

**No. 77–1632.**

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 15, 1978.

Decided Jan. 22, 1979.

Rehearing Denied March 12, 1979.

Richard F. Campbell, III, Asst. U. S. Atty., Oklahoma City, Okl. (John E. Green, Acting U. S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Barry W. Johnson, Oklahoma City, Okl. (James D. Batchelor and Jerry L. Salyer, Oklahoma City, Okl., on brief), for appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Medical Center State Bank (Bank) appeals from an order directing it to deliver to the receiver of Wilshire Apartments, Inc. (Wilshire) certain certificates of deposit held by Bank. At the time the receiver was appointed the certificates of deposit in question were endorsed and in the possession of Bank as collateral for a loan to Wilshire. The facts are not in dispute.

Wilshire is an Oklahoma corporation, which, since early 1970, has operated a low-income apartment complex. Funding for the complex was initially acquired from the Oklahoma Mortgage Company, Inc. It thereafter assigned its interest to the Federal National Mortgage Association, which, in turn, subsequently assigned its interest to the Secretary of Housing and Urban Development. On December 3, 1976, Appellee United States moved for and was granted an order appointing a receiver for Wilshire. The order stated, *inter alia*, that ". . . Wilshire Apartments, Inc., and each and every one of its agents, servants, and employees, or partners, is hereby directed to turn over and deliver to the receiver . . . all property of any nature in, on or connected with and used in the operation of the mortgaged property." Bank was not required to perform any affirmative act pursuant to the order.

On January 16, 1976, prior to the appointment of the receiver, Bank loaned Wilshire $8,742.72, which was secured in part by certificates of deposit. The record does not establish the total dollar amount of the certificates pledged on the date of the loan. The parties concede, however, that when the receiver was appointed Bank held certificates totaling $5,370.75. Under the terms of the loan Wilshire agreed that:

In case . . . any proceedings are instituted by or against Debtor under any of the provisions of the Bankruptcy Act . . . or for the appointment of a Receiver for Debtor . . . then in any such event, Debtor shall be in default hereunder. Thereupon, all sums secured hereby shall become immediately due and payable at Bank's option without notice

to Debtor, and Bank may proceed to enforce payment of the same and to exercise . . . all other rights and remedies possessed by Bank.

[R., Vol. I, p. 71.]

On December 17, 1976, United States moved for an order directing Bank to deliver to Wilshire's receiver certificates of deposit held by Bank which United States "believed" to be an asset of Wilshire. On December 20, 1970, the court issued an *ex parte* turn-over order directing Bank to deliver "all funds now in its hands which are the equivalent of an asset of Wilshire Apartments, Inc." On or about December 6, 1976, prior to entry of this order, Bank, pursuant to the loan agreement, applied $5,102.92 of the certificates to the Wilshire loan balance. Accordingly, Bank tendered the balance of the certificates, i. e., $267.83, to the receiver.

On December 30, 1976, following receipt of the turn-over order, Bank responded that the funds in its possession which were the equivalent of an asset to Wilshire had previously been delivered to the receiver, and that the certificates of deposit "are not now an asset of Wilshire Apartments, Inc. and therefore have not been delivered to said receiver." Thereafter, on January 11, 1977, United States asserted that the certificates of deposit were assets of Wilshire on the date of the appointment of the receiver and properly *in custodia legis* at the time Bank was served with notice of the receiver's appointment. On January 11, 1977, the court entered the following minute order:

Medical Center State Bank's response of December 30, 1976, to Order of this Court filed December 20, 1976, fails to show cause why said Bank should be relieved of the consequences of that Order and fails to establish any right to continue possession of the assets in question. Accordingly, IT IS ORDERED that Medical Center State Bank deliver to the receiver for defendant [Wilshire] the sum equivalent to the value of the certificates of deposit wrongfully withheld from the receiver, . . . . .

[R., Vol. I, p. 52.]

On January 25, 1977, Bank moved the court to vacate its January 11, 1977 order. Bank alleged, *inter alia*, that: the December 30, 1976 order directed it to convey "all funds *now in its hands* . . . which are the equivalent of an asset of Wilshire"; it had delivered the assets of Wilshire ($267.83) to the receiver; the certificates were not in its hands on December 20, 1976; it had a legal right to convert the certificates into cash in payment of the note pursuant to the loan agreement; its security interest in the certificates was perfected under Oklahoma law inasmuch as it had custody, control and possession of the certificates and the certificates were endorsed; the receiver would not be entitled to the certificates until the loan was paid, releasing the certificates, since the certificates were not the property of Wilshire. Bank filed a memorandum brief supportive of its motion. It cited *Bowles v. City National Bank and Trust Company of Oklahoma City*, 537 P.2d 1219 (Okl.Cr.App.1975) for the proposition that where a payee of a bank loan pledged notes with the bank as security for the loan, payee's receiver has no claim against the note until the bank loan is repaid.

The United States responded to Bank's motion. It acknowledged that the certificates of deposit were in possession of Bank but contended that its mortgage, upon which the foreclosure was brought, having been recorded on January 26, 1970, encumbered *all property* of Wilshire of every kind and character including the certificates in question. United States also argued that the appointment of the receiver "freezes rights and liabilities," that the receiver's right to possession was permanent, and that not all of the certificates of deposit converted by the Bank were included under the loan security agreement.

On April 4, 1977, the court entered its order denying Bank's motion to vacate the order of January 11, 1977. The court noted that upon the appointment of a receiver the respective liabilities and rights of the debtor and its creditors are frozen and title to the property vests in the receiver subject to

claims. Further, the court ruled that the priority of creditors claims cannot be determined by means of separate creditor's actions. The court clarified its prior order by directing that Bank "deliver all funds which, in its hands at the time of the appointment of the receiver, were an asset of Wilshire, . . . within seven days of this date."

Bank did not turn over the assets within the seven-day period. Thereafter the court entered an order to Bank to show cause, if any there be, why Bank should not be directed to turn over the assets requested by the United States. A hearing was held on the show cause order on April 21, 1977. During the course of the hearing Bank stressed that it had not proceeded in contempt of the court and that it would turn over the funds if the court entered an order finding that at the time of the receiver's appointment the certificates were in fact the property of Wilshire. The Bank contended that this was necessary in order to protect it from a stockholder's action. The court entered an Order of Clarification on April 28, 1977, stating in part: Bank was not in contempt; the certificates at issue were owned by and were the property of Wilshire on December 3, 1976, the date of the receiver's appointment; the certificates or their cash equivalent must be paid by Bank to the receiver.

Bank filed its appeal on June 27, 1977. On August 30, 1977, Appellee United States, having received payment, i. e., cash equivalent of the certificates, $5,109.92, deposited that sum with the court via an interpleader action. The interpleader action has been stayed pending Bank's appeal herein.

On appeal Bank contends that (1) the certificates of deposit were not assets of Wilshire at the date of the receiver's appointment and could not have been properly *in custodia legis*; and (2) a plenary suit must be initiated by the receiver in order to properly obtain possession of property found in the possession of a third party claiming adversely.

## I.

■ Bank's appeal is from the Clarification Order entered on April 28, 1977 wherein the court held that the certificates of deposit "were owned by and were the property of Wilshire" on the date of the appointment of the receiver. In reviewing its three other related orders, i. e., the initial turn-over order of December 20, 1976, the minute order of January 11, 1977, which found that Bank had failed to establish "any right to continued possession," and the order of April 4, 1977, which directed Bank to turn over all funds in its hands at the date of the receiver's appointment which were an asset of Wilshire, together with the Clarification Order, it is clear that the district court found that Bank was not entitled to the continued possession of the certificates and that the certificates in the Bank's possession were in fact owned by and the property of Wilshire. Thus, the court, without affording Bank a plenary hearing, ordered it to turn over the certificates or their equivalent to the receiver. We hold that the court erred.

■ Bankruptcy courts may exercise summary jurisdiction only over property in their possession. In *Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), the court observed:

A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. *Thompson v. Magnolia Co.*, 309 U.S. 478, 481 [60 S.Ct. 628, 629, 84 L.Ed. 876]. If the property is not in the court's possession and a third person asserts a *bona fide* claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated "in suits of the ordinary character, with the rights and remedies incident thereto." *Galbraith v. Vallely*, 256 U.S. 46, 50 [41 S.Ct. 415, 416, 65 L.Ed. 823]; *Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426 [44 S.Ct. 396, 68 L.Ed. 770]. But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. *Harrison v. Chamberlin*, 271

U.S. 191, 194 [46 S.Ct. 467, 468, 70 L.Ed. 897]. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. *Louisville Trust Co. v. Comingor*, 184 U.S. 18, 25–26 [22 S.Ct. 293, 296, 46 L.Ed. 413]. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. *MacDonald v. Plymouth County Trust Co.*, 286 U.S. 263 [52 S.Ct. 505, 76 L.Ed. 1093].

323 U.S. at pp. 98–99, 65 S.Ct. at p. 156.

This standard was reiterated by this court in *In Re Fox Metal Industries, Inc.*, 453 F.2d 1128 (10th Cir. 1972) citing to *Fitzgerald v. W. F. Sebel Co.*, 295 F.2d 654 (10th Cir. 1961):

Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876. In *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391, the petitioner made a claim against the funds of the bankrupt, which funds were in the legal possession of the court. In the present case, it is the bankrupt, through its Receiver, which has made a claim against an alleged debtor. It is consequently a harder question to determine if the property here was in the actual or constructive possession of the court. Frontier contends that the two checks in question are not "property," but mere choses in action, and as such are not assignments of funds to the Receiver.

In *Fitzgerald v. W. F. Sebel Co.*, 295 F.2d 654 (10th Cir.), the test for summary jurisdiction in the Tenth Circuit is stated: "If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to

have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.'" (Quoting from *Cline v. Kaplan*, 323 U.S. 97, 98–99, 65 S.Ct. 155, 89 L.Ed. 97). See also *City and County of Denver v. Warner*, 169 F.2d 508 (10th Cir.).

453 F.2d at p. 1130.

See also *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) wherein the court opined:

Thus, following the levy of August 25, 1971, actual possession of the $38,000 was held by the assignee on behalf of the United States and "where possession is assertedly held not for the bankrupt, but for others prior to bankruptcy . . . the holder is not subject to summary jurisdiction." 2 J. Moore & R. Oglebay, Collier on Bankruptcy ¶ 23.06[3], pp. 506.2–506.3 (14th ed. 1975); *Cline v. Kaplan*, 323 U.S. 97 [65 S.Ct. 155, 89 L.Ed. 97] (1944); *Galbraith v. Vallely*, 256 U.S. 46 [41 S.Ct. 415, 65 L.Ed. 823] (1921). The receiver's recourse is limited to a plenary suit under § 23 of the Bankruptcy Act, 11 U.S.C. § 46. See *Taubel-Scott-Kitzmiller Co. v. Fox, supra.*

421 U.S. at pp. 335–336, 95 S.Ct. at p. 1723.

Bank was in possession of the certificates of deposit in question at the date of the receiver's appointment. The Bank did not consent to summary adjudication and its claim was more than merely colorable. *Sherr v. Sierra Trading Corporation*, 492 F.2d 971 (10th Cir. 1974). We thus hold that the court erred in ordering the turnover of the certificates without conducting a plenary hearing. This is particularly true, when, as here, the note was executed under the laws of Oklahoma, and the Oklahoma courts have held that when a payee of loans pledged notes with bank as security for the loans, the payee's receiver has no claim against the notes until the loans are paid. *Bowle v. City National Bank and Trust Company of Oklahoma City, supra.*

II.

◼ The United States argues that we lack jurisdiction over this appeal in that the

district court's order does not constitute a judgment from which an appeal will lie and that the appeal may not be prosecuted as an interlocutory order. We disagree.

Limitations on appeals must be afforded flexible and practical considerations. In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the court observed:

> At the threshold we are met with the question whether the District Court's order refusing to apply the statute was an appealable one. Title 28 U.S.C. § 1291 . . . provides, as did its predecessors, for appeal only "from all final decisions of the district courts," except when direct appeal to this Court is provided. Section 1292 allows appeals also from certain interlocutory orders, decrees and judgments, not material to this case except as they indicate the purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties. It is obvious that, if Congress had allowed appeals only from those final judgments which terminate an action, this order would not be appealable.

> The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken.

> Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to

review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction. *Bank of Columbia v. Sweeny*, 1 Pet. 567, 569 [7 L.Ed. 265]; *United States v. River Rouge Co.*, 269 U.S. 411, 414 [46 S.Ct. 144, 70 L.Ed. 339]; *Cobbledick v. United States*, 309 U.S. 323, 328 [60 S.Ct. 540, 542, 84 L.Ed. 783].

337 U.S. at pp. 545–546, 69 S.Ct. at p. 1225.

This court considered the appealability of orders in bankruptcy proceedings in *United States v. Allen*, 395 F.2d 752 (10th Cir. 1968). We there noted:

> It is true that virtually all interlocutory orders in proceedings in bankruptcy are appealable under 11 U.S.C. § 47. But this court has held that "an interlocutory order which determines nothing adversely to the asserted rights of a party is not reviewable on direct appeal therefrom." *DeLaney v. City Investment Co.*, 224 F.2d 808, 810 (10th Cir. 1965). The bankruptcy court's administration of the bankrupt estate should not be hindered "by appeals from orders which are indecisively procedural and which do not determine some controversy or decide some step in the course of the bankruptcy proceedings." *General Electric Company v. Beehive Telecasting Corporation*, 284 F.2d 507, 509 (10th Cir. 1960). The Referee's order did not determine the jurisdictional question adversely to either party. It was clearly "indecisively procedural" and not appealable.

395 F.2d at p. 752.

The financial position of Wilshire was extremely precarious at the time of the receiver's appointment. The cash on hand was extremely limited. Thus, the district court's decision to allow the receiver to pay certain outstanding obligations after Bank was ordered to turn over the certificates might and likely would create irreparable loss and injury to Bank. Under such circumstances, the turn-over order cannot be considered simply procedural in nature. The appeal properly lies in light of the obvious final and irreparable effect that the court's turn-over order imposes on Bank.

REVERSED AND REMANDED for a plenary hearing on Bank's claim to the certificates of deposit in issue.

McKAY, Circuit Judge, concurring:

While I concur in the result reached by the majority both as to jurisdiction and the merits, my understanding of the case is sufficiently different from that of the majority to justify setting forth my reasons for concurrence.

The relevant facts are not complex. This appeal grows out of a foreclosure action brought against Wilshire Apartments, Inc. (Wilshire) by the United States, federal jurisdiction being based on 28 U.S.C. § 1345 (1976).[1] Pursuant to the foreclosure action, a receiver for Wilshire was appointed by the trial court. Among other things, the receiver sought an order requiring appellant Medical Center State Bank (the Bank) to turn over to the receiver certain deposit certificates which the receiver contends were the property of Wilshire. Although the Bank resisted in the belief the deposit certificates were its own property, the trial court granted the order in a summary proceeding, finding that the certificates were the property of Wilshire.

The Bank alleges error in the summary proceeding used by the trial court, contending that a plenary suit by the receiver is required when the receiver seeks to recover property in the possession of a third party claiming adversely. Alternatively, the Bank suggests that evidence in the record compels a legal conclusion that the certificates belonged to the Bank and could not be ordered turned over to a receiver in any event. I am persuaded by the former argument and therefore concur in the result reached by the majority.

## JURISDICTION

While the question of what constitutes a 28 U.S.C. § 1291 [2] "final decision" in situations where the order sought to be reviewed precedes final judgment has not been consistently answered,[3] I believe the order in question here is a final, appealable order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). It is for this reason alone that I believe we have jurisdiction to review the instant order. In *Cohen*, the Court recognized and defined a small category of cases, generally referred to as "collateral orders," "which are offshoots from the principal litigation in which they are issued, and which are immediately appealable, as 'final decisions,' without regard to the posture of the principal litigation." C. Wright, *Handbook of the Law of Federal Courts* 507 (3d ed. 1976). The Court in *Cohen* held the denial of defendant's motion to require the posting of security for costs to be within that category of cases, "because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." 337 U.S. at 546–47, 69 S.Ct. at 1226. *Cohen* requires that the matter under consideration have been finally disposed of by the trial court; that it be collateral to or separable from the underly-

---

**1.** 28 U.S.C. § 1345 (1976) vests in the federal district courts jurisdiction over civil actions commenced by the United States.

**2.** 28 U.S.C. § 1291 (1976) provides: "The courts of appeals shall have jurisdiction of ap-

peals from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court."

**3.** C. Wright, *Handbook of the Law of Federal Courts*, 505, 509 (3d ed. 1976).

ing claim;[4] and that a risk of important loss will be engendered by failure to review immediately.[5] C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911 at 470–71 (1976). This is the analysis I apply in determining we have jurisdiction to review the instant order.

The order appealed from was not tentative; it was intended to resolve the question of whether the property was the Bank's or whether it was Wilshire's and was thus properly available to the receiver. The trial judge concluded it was Wilshire's and indicated to the Bank that appellate action would be necessary if the consequences of the order were to be avoided.[6] It is also apparent that the questions of who was entitled to the deposit certificates and how that was to be determined are collateral to the merits of the underlying foreclosure action. Finally, the appeal will, if successful, prevent an important loss to the Bank. The Bank persuasively argues that under applicable state law the certificates were its own property at the time it was instructed to turn them over to the receiver. If that position is correct, only successful appeal by the Bank at this juncture will prevent its having to part with assets rightfully its own.

## PROCEDURE BELOW

The trial court ordered the Bank to give the receiver the deposit certificates or their cash equivalent, finding the certificates had been an asset of Wilshire. The order was granted in summary fashion in the foreclosure proceeding. The majority finds this procedure improper, relying exclusively on bankruptcy precedents. While such cases are persuasive authority for the decision reached, they do not directly control the instant dispute, which arose in the context of a receivership proceeding. However, the applicable rule is the same in each situation.

In *Cusack v. Prudential Ins. Co. of America*, 192 Okl. 218, 134 P.2d 984 (1943), a case, like the instant one, in which a receiver had charge of real estate in connection with mortgage foreclosure actions, the court stated that "[i]t is the general rule that a receiver has no right through summary proceedings to obtain the possession of property found in the possession of third persons claiming adversely."[7] 134 P.2d at 987. The court also noted that the federal courts treat differently situations where the possession and claim of the third party arose after, rather than before, the appointment of the receiver. *Id.* While the receiver may proceed summarily when possession follows appointment, when possession and claim precede appointment, "the receiver will be required to obtain possession by a plenary suit." *Id.*

The Bank was in possession of the notes prior to the receiver's appointment. The Bank's claim to the certificates, especially in light of *Bowles v. City National Bank & Trust Co.*, 537 P.2d 1219 (Okl.Cr.App.1975), was not frivolous. The Bank did not consent to summary adjudication in the foreclosure proceeding nor otherwise waive its right to a plenary proceeding. It follows that ordering transfer of the certificates on a summary basis was error.

---

**4.** See *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 172, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

**5.** Whether the appeal must also involve an "unsettled" and "important" question has been the subject of some dispute. C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911 at 471–72, 495–96 (1976). I am not sure that this factor has relevance to a determination of "finality." In any event, some courts that recognize this requirement view it as satisfied "if the result would be to settle an important question that could affect many other cases." *Id.* at 471. Our resolution settles the question of what procedure a receiver must follow to obtain property that is in the hands of a third party also claiming it. Other courts use

the requirement only "to deny appeal of clearly discretionary matters." *Id.* The instant case does not involve review of a discretionary matter.

**6.** The fact that the Bank may be able ultimately to recover all or some part of the certificates' proceeds as a *creditor* of Wilshire does not make the instant order any less final. This is a separate matter.

**7.** The court noted certain recognized exceptions to this rule, none of which has applicability to the facts of this case. See 134 P.2d at 987.

Like the majority, I do not decide whether the receiver or the Bank is entitled to the proceeds of the deposit certificates as a matter of law. We agree that the receiver must, if he is to obtain those proceeds, institute a plenary suit against the Bank and there demonstrate his derivative entitlement to the proceeds.